RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0079p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 23-3466

TYREN L. CERVENAK,

*Defendant-Appellant.*

On Petition for Rehearing En Banc
United States District Court for the Northern District of Ohio at Cleveland.
No. 1:22-cr-00204-1—John R. Adams, District Judge.

Argued En Banc: December 11, 2024

Decided and Filed: April 2, 2025

Before: SUTTON, Chief Judge; MOORE, CLAY, GILMAN, McKEAGUE, GRIFFIN,
KETHLEDGE, STRANCH, THAPAR, BUSH, LARSEN, NALBANDIAN, READLER,
MURPHY, DAVIS, MATHIS, BLOOMEKATZ, and RITZ, Circuit Judges.

_____

## COUNSEL

**ARGUED EN BANC:** Catherine Adinaro Shusky, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Cleveland, Ohio, for Appellant. Jason Manion, UNITED STATES
ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON SUPPLEMENTAL BRIEF:**
Catherine Adinaro Shusky, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland,
Ohio, for Appellant. Jason Manion, James A. Ewing, UNITED STATES ATTORNEY'S
OFFICE, Cleveland, Ohio, for Appellee.

MATHIS, J., delivered the opinion of the court, in which SUTTON, C.J., and MOORE,
CLAY, GILMAN, KETHLEDGE, STRANCH, LARSEN, DAVIS, and BLOOMEKATZ, JJ.,
joined in full, and BUSH, NALBANDIAN, MURPHY, and RITZ, JJ., joined in part.
NALBANDIAN, J. (pp. 23–28), delivered a separate opinion concurring in all but Part IV.A.2
and footnote 2, in which BUSH and MURPHY, JJ., joined. RITZ, J. (pp. 29–36), delivered a
separate opinion concurring in part and dissenting in part, in which GRIFFIN and READLER,

JJ., joined in Parts I–IV.  GRIFFIN, J. (pp. 37–40), delivered a separate dissenting opinion in which THAPAR, J., joined.  THAPAR, J. (pp. 41–84), delivered a separate dissenting opinion in which McKEAGUE, GRIFFIN, and READLER, JJ., joined.

————————————

**OPINION**

————————————

MATHIS, Circuit Judge.  Congress instructed the Sentencing Commission to enhance the Sentencing Guidelines range for individuals convicted of a crime of violence or a controlled substance offense after having been previously convicted of two or more such offenses. 28 U.S.C. § 994(h).  The Commission created the career-offender guideline in response to Congress's directive.

We must decide if the district court properly increased Tyren Cervenak's Guidelines range under the career-offender guideline.  Specifically, we consider whether Cervenak's prior convictions for robbery under Ohio law are "crimes of violence," as the Guidelines use that term. Because we hold that they are not, we vacate Cervenak's sentence.

**I.**

In 2022, a grand jury indicted Cervenak on two counts of distributing controlled substances, *see* 21 U.S.C. § 841(a)(1), (b)(1)(C), and on one count of being a felon in possession of a firearm and ammunition, *see* 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2021).  Cervenak pleaded guilty as charged.

Cervenak had multiple prior felony convictions.  One of the convictions was for trafficking heroin.  Cervenak also had two convictions for robbery, in violation of Ohio Revised Code § 2911.02(A)(2).

The district court enhanced Cervenak's sentence under the career-offender guideline. The district court held that the guideline applied because Cervenak had been convicted of a controlled substance offense (the two distribution-of-controlled-substances charges) after having been convicted of a prior controlled substance offense (trafficking heroin) and two prior crimes of violence (robbery).  Application of the enhancement resulted in a Guidelines range of 151 to

188 months' imprisonment.　　The district court sentenced Cervenak to 188 months' imprisonment.

Cervenak timely appealed, arguing that the career-offender guideline should not apply because his robbery convictions are not crimes of violence, as defined by the Guidelines. Relying on *United States v. Carter*, 69 F.4th 361 (6th Cir. 2023), a panel of this court disagreed with Cervenak. *United States v. Cervenak*, 99 F.4th 852, 854–63 (6th Cir. 2024). Judge Gilman dissented. *Id.* at 868–82. Around the same time, another panel of this court considered a similar question involving a prior conviction under Ohio's aggravated-robbery statute, concluding that the defendant's aggravated-robbery conviction was not a crime of violence under the Guidelines. *United States v. Ivy*, 93 F.4th 937 (6th Cir. 2024).　We voted to rehear this case en banc to resolve this tension in our caselaw. *United States v. Cervenak*, 110 F.4th 1296 (6th Cir. 2024) (en banc) (mem.).

## II.

The Guidelines create a sentence enhancement for career offenders. U.S.S.G. § 4B1.1 (2021).[1]　A defendant is a career offender if he was an adult when he committed, and was convicted of, a federal felony offense "that is either a crime of violence or a controlled substance offense," and he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." *Id.* § 4B1.1(a).　The parties dispute only whether Cervenak has two prior qualifying convictions.　More specifically, Cervenak contends that the career-offender guideline does not apply because his state-law robbery convictions should not count as crimes of violence, leaving him with only one qualifying conviction.

A prior conviction does not constitute a "crime of violence" just because the crime is generally considered violent in common parlance.　The Guidelines define the term "crime of violence," and the Supreme Court has instructions on how to apply it that we must follow.　A violation of a federal or state criminal statute is a crime of violence if the offense is "punishable by imprisonment for a term exceeding one year" and it:

---

[1]We use the 2021 version of the Guidelines because that version was in effect at the time of Cervenak's sentencing.　U.S.S.G. § 1B1.11(a).

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

*Id.* § 4B1.2(a). We will refer to subpart (1) as the elements clause and subpart (2) as the enumerated-offenses clause.

The dispute centers on whether Cervenak's robbery convictions are crimes of violence under the enumerated-offenses clause. In particular, the government argues that Cervenak's robbery convictions are a categorical match for Guidelines extortion and robbery. All agree that the robbery convictions are not crimes of violence under the elements clause. *See United States v. Butts*, 40 F.4th 766, 773 (6th Cir. 2022).

We review de novo "a district court's determination that a prior conviction is a crime of violence under [§] 4B1.1." *United States v. Ruvalcaba*, 627 F.3d 218, 221 (6th Cir. 2010) (internal quotation marks omitted).

**III.**

We use the categorical approach to determine if Cervenak's prior conviction matches Guidelines extortion or robbery. *United States v. Burris*, 912 F.3d 386, 392, 399–400 (6th Cir. 2019) (en banc). Under the categorical approach, we "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime." *Descamps v. United States*, 570 U.S. 254, 257 (2013). We look first to the Guidelines themselves for the generic definition. If the Guidelines do not define the offense, then we must discern the generic definition based on common understanding, such as from a survey of state law. *See Taylor v. United States*, 495 U.S. 575, 580, 589 (1990); *United States v. Camp*, 903 F.3d 594, 600–01 (6th Cir. 2018). A defendant's prior conviction is a crime of violence under the Guidelines "only if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps*, 570 U.S. at 257. "[A] state crime cannot qualify as" a crime of violence "if its elements are broader than those of [the] generic offense." *Mathis v. United*

*States*, 579 U.S. 500, 509 (2016). In making the comparison between a defendant's prior conviction and the generic offense, we do not consider how the defendant committed the crime that led to the prior conviction. *United States v. Taylor*, 596 U.S. 845, 850 (2022).

How does the categorical approach work in this case? We compare the elements of the Ohio robbery statute with the elements of extortion and robbery under the Guidelines. If a hypothetical defendant can be convicted of Ohio robbery without satisfying the elements of Guidelines extortion or robbery, then the prior conviction is not a crime of violence. *See Ivy*, 93 F.4th at 943. We "must presume that the [prior] conviction rested upon nothing more than the least of the acts criminalized under the" Ohio robbery statute. *See Mellouli v. Lynch*, 575 U.S. 798, 805 (2015) (internal quotation marks omitted).

In applying the categorical approach, we must be careful to distinguish between the elements of an offense and the means—"the underlying brute facts," *Mathis*, 579 U.S. at 509 (internal quotation marks omitted)—of the offense. The elements of an offense "are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Id.* at 504 (internal quotation marks omitted). At trial, a jury must find each element of an offense beyond a reasonable doubt to convict a defendant. *Id.* "Means, on the other hand, are mere real-world things—extraneous to the crime's legal requirements." *Richardson v. United States*, 890 F.3d 616, 620 (6th Cir. 2018) (internal quotation marks omitted). "They are circumstances or events having no legal effect or consequence." *Id.* (quotation omitted). A jury does not have to find the means of an offense. *Id.*

When applying the categorical approach to a state statute, we can consider several sources to differentiate elements from means. We "look first to state law, including judicial interpretations of the criminal statute by state courts." *United States v. Ritchey*, 840 F.3d 310, 318 (6th Cir. 2016). This includes the text of the criminal statute because "the statute itself may provide the answer." *Id.* Where, for instance, the statute provides alternatives and assigns different punishments to different alternatives, each alternative defines a separate crime. *Mathis*, 579 U.S. at 518. If, by contrast, "a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.* (citation omitted). Finally, if state courts and

the state statute do not provide a clear answer, we can consider "the record of a prior conviction itself." *Id.*

**IV.**

We start by examining the Ohio robbery statute and Cervenak's robbery convictions. We then compare Cervenak's convictions with Guidelines extortion and Guidelines robbery. That analysis reveals that Cervenak's robbery convictions are not crimes of violence under the Guidelines.

Cervenak pleaded guilty to robbery under Ohio Revised Code § 2911.02. That statute provides, in pertinent part:

> (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control;
>
> (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
>
> (3) Use or threaten the immediate use of force against another.
>
> . . .
>
> (C) As used in this section:
>
> . . .
>
> (2) "Theft offense" has the same meaning as in section 2913.01 of the Revised Code.

Ohio Rev. Code Ann. § 2911.02. "A violation of division (A)(1) or (2)" is a second-degree felony. *Id.* § 2911.02(B). "A violation of division (A)(3)" is a third-degree felony. *Id.*

The robbery statute directs us to Ohio Revised Code § 2913.01 for the definition of "theft offense." Section 2913.01 in turn defines theft offense as a violation of any one of more than thirty Ohio statutes. *Id.* § 2913.01(K)(1).

One of the theft offenses identified in § 2913.01 is § 2913.02—Ohio's theft statute. The theft statute provides: "No person, with purpose to deprive the owner of property or services,

shall knowingly obtain or exert control over either the property or services" of another in any one of five specified ways. *Id.* § 2913.02(A).

But the theft-offense definition covers many other crimes too. Those crimes include breaking and entering (§ 2911.13), trespassing in a habitation when a person is present (§ 2911.12), forgery (§ 2913.31), tampering with records (§ 2913.42), and personating an officer (§ 2913.44), among others. *Id.* § 2913.01(K)(1).

We consider the Ohio robbery statute a divisible statute. A divisible "statute sets out one or more elements of the offense in the alternative." *Descamps*, 570 U.S. at 257. Such statutes "define multiple crimes." *Mathis*, 579 U.S. at 505. When dealing with divisible statutes, we apply the modified categorical approach. *Id.* Under the modified categorical approach, courts can look "to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* at 505–06; *see also Shepard v. United States*, 544 U.S. 13, 16 (2005). We refer to these documents as the *Shepard* documents.

As we see it, the Ohio robbery statute is divisible twice over. *Butts*, 40 F.4th at 770–71; *cf. Ivy*, 93 F.4th at 943. It is divisible first by the type of robbery at issue—§ 2911.02(A)(1), (A)(2), or (A)(3). It is then divisible by the type of theft offense the defendant committed, or attempted to commit, to complete the robbery. All agree on the first step of divisibility. And the parties agree that the statute is twice divisible. But Judge Thapar sees things differently. He contends that the type of theft offense underlying an Ohio robbery conviction is only a means of committing robbery, not an element of the robbery offense. Ohio law suggests otherwise.

Start with Ohio caselaw. In *State v. Tolliver*, the Ohio Supreme Court opined that the Ohio robbery statute "predicates every robbery *on the elements* of a completed or an attempted 'theft offense.'" 19 N.E.3d 870, 874 (Ohio 2014) (emphasis added). Because the Ohio Supreme Court says that a robbery conviction requires proving the elements of the underlying theft offense, that should conclude the elements-or-means analysis. *See State v. Pigg*, No. 04CA2947, 2005 WL 1060569, at *5 (Ohio Ct. App. Apr. 28, 2005) (holding that the trial court did not err in

its jury instructions on robbery because the instructions required the jury to find that the defendant committed the theft offense of § 2913.02 theft).

Ohio's pattern jury instructions confirm Ohio caselaw.  Those instructions state, in pertinent part:

> The defendant is charged with robbery.  Before you can find the defendant guilty, you must find beyond a reasonable doubt that . . . the defendant, in (committing) (attempting to commit) (fleeing immediately after [committing] [attempting to commit]) the offense of (insert name of applicable theft offense under R.C. 2913.01[K]) . . . .
>
> UNDERLYING THEFT OFFENSE.  Before you can find that the defendant was (committing) (attempting to commit) the offense of (insert name of applicable theft offense under R.C. 2913.01[K]), you must find beyond a reasonable doubt that the defendant (describe each element of applicable theft offense).

2 CR Ohio Jury Instructions 511.02 (emphasis omitted).  Although the pattern instructions are not "binding legal authority," they "are helpful as an example of the generally accepted interpretation of state law."  *State v. Smith*, 223 N.E.3d 919, 935 (Ohio Ct. App. 2023) (internal quotation marks omitted).

Based on Ohio law, the State "must prove—and a jury must find—the elements of a *particular* predicate theft offense" to convict a defendant of robbery.  *Cf. United States v. Wilson*, 978 F.3d 990, 997 (6th Cir. 2020).[2]  The theft offense underlying the robbery convictions is, therefore, an element of the crime.  Judge Thapar's suggestion to the contrary—that a jury could convict a person of robbery based on a statutorily defined theft offense without having to find each element of that offense beyond a reasonable doubt—would run afoul of the Due Process Clause.  *See In re Winship*, 397 U.S. 358, 364 (1970).  We thus apply the modified categorical approach to determine: (1) which type of robbery encompassed Cervenak's crimes of conviction, and (2) which theft offense served as the predicate for the robbery convictions.  *Cf. Wilson*, 978 F.3d at 999.

---

[2]Judge Thapar argues that we should certify to the Ohio Supreme Court the question of whether the individual theft offenses are elements or means of robbery.  Because Ohio law has already answered this question, certification is unnecessary.

The *Shepard* documents give us a partial answer.  The indictment that preceded Cervenak's robbery convictions shows Cervenak committed robbery under § 2911.02(A)(2).  But the indictment says nothing about which theft offense served as the predicate for the robbery convictions.  That silence means that we must look to "the *least* serious conduct" criminalized by § 2911.02(A)(2) with any of the various theft offenses as a predicate to determine if Cervenak's robbery conviction was a crime of violence under the Guidelines.  *See Borden v. United States*, 593 U.S. 420, 441 (2021) (plurality opinion).

## A.

Are Cervenak's robbery convictions broader than Guidelines extortion?  On this record, the answer is yes.

Ohio robbery, without a specified predicate theft offense, does not categorically match Guidelines extortion.  The elements of Guidelines extortion are "[1] obtaining something of value from another [2] by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury."  U.S.S.G. § 4B1.2 cmt. n.1.  Based on the plain language of the robbery statute, which incorporates the numerous Ohio theft offenses, a defendant can be convicted of robbery without obtaining something of value.

Several theft offenses do not require obtaining something of value from another person. The theft offense of breaking and entering criminalizes the "trespass on the land or premises of another, with purpose to commit a felony."  Ohio Rev. Code Ann. § 2911.13(B).  The theft offense of trespass in a habitation prohibits the "trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."  *Id.* § 2911.12(B).  And a person is guilty of the theft offense of forgery if, "with purpose to defraud,"[3] he "[f]orge[s] any writing of another without the other person's authority." *Id.* § 2913.31(A)(1).  These theft offenses do not require the culprit to obtain anything.  *See Ivy*, 93 F.4th at 946–47; *State v. Stone*, No. 2023-CA-23, 2024 WL 208125, at *1 (Ohio Ct. App. Jan. 19, 2024) (trespass in a habitation); *State v. Dunn*, Nos. 112301 & 112916, 2023 WL 8474188, at

---

[3]"'Defraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another."  Ohio Rev. Code Ann. § 2913.01(B).

\*6 (Ohio Ct. App. Dec. 7, 2023) (breaking and entering). Nor do the additional elements of § 2911.02(A)(2) that are necessary to turn the theft offense into a robbery require obtaining property from another person. Stated another way, a defendant could commit robbery by "[i]nflict[ing], attempt[ing] to inflict, or threaten[ing] to inflict physical harm on another," Ohio Rev. Code Ann. § 2911.02(A)(2), by breaking and entering, trespassing in a habitation, or committing forgery without "obtaining something of value from another," U.S.S.G. § 4B1.2 cmt. n.1.

The relevant documents from Cervenak's prior convictions do not specify which crime served as the predicate theft offense. If, as caselaw requires, we presume the conviction rested on the least serious conduct criminalized by the statute—in other words, conduct that does not require obtaining something of value—Cervenak's conviction is not a categorical match for Guidelines extortion. *See Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). We may rely only on "what the state conviction necessarily involved" when analyzing whether there is a categorical match. *Id.*

The government and Judge Thapar disagree with this analysis and make several arguments in response. The crux of the government's argument is that when a defendant is convicted of robbery under § 2911.02(A)(2) and the defendant's indictment fails to specify the theft offense, Ohio courts assume that § 2913.02 theft was the predicate theft offense. And, relying on *United States v. Carter*, the government further contends that if § 2913.02 theft is the predicate theft offense for all such robbery convictions in Ohio, then an Ohio robbery conviction would categorically match Guidelines extortion. *See* 69 F.4th at 363–64; *cf. United States v. Rice*, No. 23-3771, 2024 WL 3898564, at \*6 (6th Cir. Aug. 22, 2024).[4] Judge Thapar parrots the government's arguments, but he couches them in constitutional terms. In his view, Fifth and Sixth Amendment violations occur if § 2913.02 theft does not serve as the predicate offense for a defendant's robbery conviction when the indictment does not indicate the specific theft offense. We reject the government's and Judge Thapar's arguments.

---

[4]The government's argument in this case followed *Carter*, as did the panel's opinion. *Carter*'s holding and analysis are incompatible with our decision today.

**1.**

*First*, the government argues that, under Ohio caselaw, every § 2911.02(A)(2) robbery involves § 2913.02 theft or attempted theft. Thus, the government concludes, we must assume that the predicate offense for Cervenak's robbery convictions was § 2913.02 theft or attempted theft. The government claims that the Ohio Supreme Court established this principle in *State v. Smith*, 884 N.E.2d 595 (Ohio 2008). But the government's argument is misguided.

In *Smith*, a grand jury indicted the defendant for robbery under § 2911.02(A)(3). 884 N.E.2d at 596. The indictment indicated that the predicate theft offense was "theft of retail merchandise from Macy's." D. 46-2 (caps and bold removed). After a bench trial, the trial-court judge acquitted the defendant of robbery but convicted her of theft. *Smith*, 884 N.E.2d at 596–97. At issue before the Ohio Supreme Court was whether theft is a lesser-included offense of robbery. *Id.* at 596. *Smith* held that it is. Specifically, *Smith* said that "theft is a lesser included offense of robbery as statutorily defined in the alternative of *robbery by theft*, because it would be impossible to ever commit a *robbery by theft* without also committing a theft." *Id.* at 599 (emphasis added).

*Smith* does not help the government for two reasons. *One*, the *Smith* indictment identified theft as the predicate theft offense; Cervenak's indictment does not. *Two*, the *Smith* court concluded only that theft is *a* lesser-included offense of robbery. But that does not make theft the lesser-included offense of *all* robbery convictions. *See, e.g.*, *State v. Castle*, 86 N.E.3d 813, 817 (Ohio Ct. App. 2017) (holding that the theft offense of receiving stolen property, Ohio Rev. Code Ann. § 2913.51(A), is a lesser-included offense of robbery).

Indeed, this is the only reading that accords with the text of Ohio's robbery statute. Under Ohio law, an offense is a lesser-included offense only if "the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed." *State v. Owens*, 166 N.E.3d 1142, 1144 (Ohio 2020) (quotation omitted). But the examples described above show instances where a robbery conviction does not require "theft"— i.e., obtaining another's property in violation of § 2913.02(A). *See supra* Part IV.A. And when

the predicate theft offense is not specified, *Smith* does not require Ohio courts to presume that § 2913.02 theft is the predicate.

The government then pivots to argue that Ohio cases have relied on *Smith*, explicitly and implicitly, to establish a default that § 2913.02 theft is the predicate theft offense when a defendant's indictment is silent as to the predicate theft offense. But *Smith* "creates no default." *See Moncrieffe*, 569 U.S. at 197. Nor do the other cases the government cites establish such a default. Although in those cases the indictment failed to specify which predicate theft offense the defendant was charged with, the Ohio courts analyzed the trial testimony for sufficiency, weight, or jury-instruction purposes under the assumption that the predicate offense was § 2913.02 theft. *See e.g.*, *State v. Gunn*, No. L-20-1034, 2021 WL 2701292, at *6 (Ohio Ct. App. June 30, 2021) (sufficiency); *State v. Tenbrook*, No. CA2020-01-005, 2020 WL 6554675, at *2 (Ohio Ct. App. Nov. 9, 2020) (weight); *State v. Villani*, No. CA2018-04-080, 2019 WL 2085984, at *5 (Ohio Ct. App. May 13, 2019) (availability of jury instructions). The fact that evidence sufficient to prove § 2913.02 theft satisfies the theft-offense element of a robbery conviction does not mean that proving § 2913.02 theft is the only way to prove a theft offense. We must conduct a fundamentally different analysis than the Ohio courts conducted in those cases. Unlike the Ohio courts, we cannot review the entire record to determine whether § 2913.02 *could* be an appropriate predicate based on the facts in the state-court record. Instead, we must look to a much narrower class of documents and determine whether § 2913.02 theft *must* be the predicate. *See Moncrieffe*, 569 U.S. at 190–91.

None of the government's cases limits the statutory definition of theft offense to just § 2913.02 theft. And, critically, many of the cases cited by the government acknowledge that § 2913.02 theft is just one type of theft offense. *See, e.g.*, *State v. Singleton*, No. 28457, 2020 WL 2466913, at *2 (Ohio Ct. App. May 13, 2020) ("A 'theft offense' includes any of the multiple enumerated offenses listed in R.C. 2913.01(K)."); *State v. McCloud*, No. 27825, 2018 WL 3954284, at *3 (Ohio Ct. App. Aug. 17, 2018) ("The applicable meaning of the term 'theft offense' is provided by R.C. 2913.01(K)(1) and includes violations of R.C. 2913.02(A)."); *State v. Pullen*, No. 25829, 2015 WL 627650, at *4 (Ohio Ct. App. Feb. 13, 2015) (describing the

definition of "'theft offense' under the robbery statute" as "applying the definition in R.C. 2913.01(K)(1), which includes a violation of R.C. 2913.02").

*Second*, the government argues that Cervenak failed to show, through Ohio caselaw, that a "realistic probability" exists that Ohio courts would apply the robbery statute to conduct broader than Guidelines extortion. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). But a defendant need not provide caselaw when they can point to the text of the state statute. "We cannot ignore the statutory text." *Camp*, 903 F.3d at 602 (quotation omitted). Thus, where, as here, a statute's meaning "is plain, the defendant need not provide a case to demonstrate a realistic probability that the statute is broader than the generic offense." *Id.* (internal quotation marks omitted). The plain language of a criminal statute can demonstrate, like in this case, that a state would apply it to a broader swath of conduct than the generic definition of a Guidelines offense. On this point, we are in good company. *See United States v. Proctor*, 28 F.4th 538, 552–53 (4th Cir. 2022); *Aguirre-Zuniga v. Garland*, 37 F.4th 446, 450–51 (7th Cir. 2022); *Aspilaire v. U.S. Att'y Gen.*, 992 F.3d 1248, 1255 (11th Cir. 2021); *Gonzalez v. Wilkinson*, 990 F.3d 654, 661 (8th Cir. 2021); *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1147 (9th Cir. 2020); *Zhi Fei Liao v. Att'y Gen. U.S.*, 910 F.3d 714, 724 (3d Cir. 2018); *Hylton v. Sessions*, 897 F.3d 57, 63 (2d Cir. 2018); *United States v. Titties*, 852 F.3d 1257, 1274–75 (10th Cir. 2017); *Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017). *But see Alexis v. Barr*, 960 F.3d 722, 727 (5th Cir. 2020).

Here, "the *least* serious conduct" criminalized by Ohio's robbery statute, *see Borden*, 593 U.S. at 441—such as when a robbery conviction is predicated on the theft offenses of breaking and entering, trespass in a habitation, or forgery—falls outside the Guidelines definition of extortion. Subject to a contrary interpretation by Ohio courts, *see Taylor*, 596 U.S. at 859, the plain text of the robbery statute thus obviates the need for caselaw to show a realistic probability that Ohio criminalizes robbery beyond the Guidelines extortion definition.

To hold otherwise would place defendants in the "odd[]" situation of having to procure and "present empirical evidence about the [State's] own prosecutorial habits." *Id.* at 857. That creates "practical challenges . . . in a world where most cases end in plea agreements." *Id.* So, "in applying the categorical approach, state law crimes should . . . be given their plain meaning." *Swaby*, 847 F.3d at 66.

The government's reading of *Duenas-Alvarez* is unavailing. In *United States v. Taylor*, the Supreme Court explained how the *Duenas-Alvarez* realistic-probability inquiry operates. 596 U.S. at 858. The Court noted that, "[i]n *Duenas-Alvarez*, there was no doubt that the relevant state offense overlapped significantly with the" definition of the federal generic offense. *Id.* But the defendant nonetheless argued that state courts interpreted the state offense to reach conduct beyond the federal offense, in a manner not clearly contemplated by the statute's text. *Id.* Therefore, the defendant had to point to state caselaw to show a "realistic probability" that the State would apply its statute as the defendant suggested. *Id.*; *Duenas-Alvarez*, 549 U.S. at 193. The Court further observed, "the elements of the relevant state and federal offenses clearly overlapped and the only question the Court faced was whether state courts *also* appl[ied] the statute in [a] special (nongeneric) manner." *Taylor*, 596 U.S. at 859 (alterations in original) (internal quotation marks omitted). But when the text of the statute itself clearly reaches a broader swath of conduct than the federal offense, "Congress tasked the courts with a much more straightforward job: Look at the elements of the underlying crime and ask" whether they match.**5** *Id.* at 860.

Put differently, in *Duenas-Alvarez*, the Court required the defendant to point to state caselaw because the dispute was about how far the elements of the state offense reached. The Court did not look to caselaw to determine the elements themselves, as the government urges us to do here. Although caselaw might provide clarity on the breadth of conduct that the statutory elements proscribe, the statute itself defines the elements. *See Descamps*, 570 U.S. at 261. We have followed these precedents, looking to the statutory text to determine the statutory elements,

---

**5***Mellouli v. Lynch* casts further doubt on the notion that *Duenas-Alvarez* requires a defendant to present caselaw when the statutory text itself creates a realistic probability that a state would apply its statute to conduct not covered by a Guidelines offense. In *Mellouli*, the Court considered whether a state drug-possession conviction made a lawful permanent resident eligible for removal. The criminal charge and plea agreement did not identify which controlled substance Mellouli pleaded guilty to possessing under Kansas law. 575 U.S. at 800. And Kansas's drug "schedules included at least nine substances not included in the federal lists." *Id.* at 802. Applying the categorical approach, the Court concluded that Mellouli's conviction was not a categorical match because Kansas's drug schedules included drugs not listed in the federal counterpart. *Id.* at 808. The Court reached this conclusion without citing *Duenas-Alvarez*, and the Court never considered whether Mellouli had presented caselaw showing that Kansas had prosecuted defendants for possession of substances not listed under the federal drug schedule. But that is *exactly* what you would expect the Court to have done, were *Duenas-Alvarez* to require a defendant to present a case even when the statutory text clearly renders a state statute broader than its federal comparator. *See Gonzalez*, 990 F.3d at 660 (making this point); *Alexis*, 960 F.3d at 732 (Graves, J., concurring) (same).

and then looking to caselaw to assess "the full range of conduct encompassed by those statutory elements." *See Cradler v. United States*, 891 F.3d 659, 667–70 (6th Cir. 2018).

As explained above, there are several instances in which the elements of Ohio's robbery statute plainly cover conduct that Guidelines extortion does not. Take it from Judge Thapar, who tells us that Ohio's robbery statute, on its "face[]," "criminalize[s] conduct that doesn't necessarily entail ordinary theft (taking something of value from another)." Thapar Dissent at 59. Cervenak thus does not ask us to find that Ohio applies its robbery statute in a "special (nongeneric) manner." *Taylor*, 596 U.S. at 859 (quotation omitted). He asks us to simply read the statute's plain text. He does not have to point to caselaw for that. And unless Ohio courts tell us otherwise, we will give the text its plain meaning. Doing so does not require any "application of legal imagination to [the] state statute's language." *Duenas-Alvarez*, 549 U.S. at 193.

But even applying the government's reading of *Duenas-Alvarez*, the result does not change. In *State v. Dixon*, the Ohio Court of Appeals upheld a robbery conviction based on forgery as the predicate theft offense when the indictment did not specify the predicate. No. 89-CA-22, 1990 WL 94612, at *2–3 (Ohio Ct. App. June 20, 1990). And in *State v. Swarthout*, the same court upheld a robbery conviction predicated on attempted unauthorized use of property, a theft offense under Ohio Revised Code §§ 2913.01(K)(1); 2913.04(A), where the indictment did not name a predicate theft offense. No. 10CA0107-M, 2011 WL 4526840, at *3–4 (Ohio Ct. App. Sept. 30, 2011). The elements for robbery convictions predicated on forgery or attempted unauthorized use do not require a defendant to obtain something of value from another. This further shows that Cervenak's robbery conviction is broader than Guidelines extortion.

*Third*, the government argues that the Ohio robbery statute substantially corresponds to the Guidelines extortion definition even if the least criminalized acts under the statute do not require a defendant to obtain something of value from another. But Guidelines extortion cannot categorically match a state statute that does not require that a defendant obtain something of value from another person, so this argument fails. *Cf. Sanchez-Perez v. Garland*, 100 F.4th 693, 698 (6th Cir. 2024).

**2.**

Judge Thapar argues that a defendant's Fifth and Sixth Amendment rights to receive fair notice of the charges against him would be violated if § 2913.02 theft did not serve as the predicate offense for a defendant's robbery conviction when the indictment does not indicate the specific theft offense. But time and again the Ohio Supreme Court has explained that "an indictment is not defective as long as it tracks the language of the criminal statute describing the offense, because that suffices to provide the defendant with adequate notice of the charges against him." *State v. Whitaker*, 207 N.E.3d 677, 695 (Ohio 2022) (alterations and internal quotation marks omitted); *see also State v. Horner*, 935 N.E.2d 26, 33 (Ohio 2010). And if the indictment tracks the statute, the defendant can remedy "the omission of the underlying [offense] in the indictment" through a "bill of particulars." *State v. Skatzes*, 819 N.E.2d 215, 233 (Ohio 2004); *cf. State v. Vaughn*, No. 10CA009820, 2011 WL 332659, at *2–3 (Ohio Ct. App. Jan. 31, 2011) (concluding that a charge of violating Ohio's theft-in-office statute which, like robbery, requires an underlying theft offense, did not require the indictment to name a particular theft offense); *State v. Scott*, No. 22745, 2010 WL 1732601, at *8 (Ohio. Ct. App. Apr. 30, 2010) ("The fact that the indictment did not name the [predicate] theft offense [to a charge of aggravated robbery] did not render the indictment fatally defective." (citation omitted)). Ohio prosecutors must provide "the defendant with a bill of particulars setting up specifically the nature of the offense charge and of the conduct of the defendant alleged to constitute the offense" if the defendant so requests. Ohio R. Crim. P. 7(E).

Thus, an indictment that tracks Ohio's robbery statute provides a defendant with constitutionally adequate notice, even if it does not name the predicate theft offense. *See Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006) ("[I]n a state prosecution, due process mandates only that the indictment provide the defendant with fair notice of the charges against him." (internal quotation marks omitted)). That is because a bill of particulars cures any possible confusion as to the predicate theft offense, thus alleviating any constitutional concerns. *See Warner v. Zent*, 997 F.2d 116, 129 (6th Cir. 1993) (holding that an "indictment, as fleshed out . . . by a bill of particulars," informed an Ohio defendant "of the 'nature and cause' of the accusations made against him").

Ultimately, there is a critical difference between a due-process inquiry and a categorical-approach inquiry. In evaluating a due-process challenge, a court must determine whether the defendant had adequate notice of the charges against him. As described above, an indictment that does not specify the predicate theft offense can still provide such adequate notice. By contrast, in applying the modified categorical approach, the court must determine whether "the jury necessarily found" the defendant guilty of a particular offense. *See Descamps*, 570 U.S. at 272. Presuming that a defendant's Ohio robbery conviction was always predicated on § 2913.02 theft not only fails to meet this test, but would also "raise serious Sixth Amendment concerns" by going beyond "what the jury in a prior trial must have accepted as the theory of the crime" or "what the defendant and state judge must have understood as the factual basis of the prior plea." *Id.* at 269 (quotation omitted). And presuming that a jury convicted a defendant of a predicate offense that was not specified to the jury at the time of conviction would raise its own due-process and fair-notice concerns.

Judge Thapar also argues that if we do not agree with his conclusion that Ohio law presumes § 2913.02 theft is always the predicate theft offense when the indictment charging a defendant with robbery does not specify the theft offense, then we should ask the Ohio Supreme Court to clarify this point. We can certify questions to state high courts when a question of state law is "novel[]" or "unsettle[d]." *See Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). However, we "will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) (Gorsuch, J.)). Instead, "[w]hen we see a reasonably clear and principled course" to resolving the question, we will answer it without certification. *Id.* (quoting *Pino*, 507 F.3d at 1236).

We do not need to certify a question to the Ohio Supreme Court in this case. Instead, the current statutory text and relevant caselaw provide "sufficient guidance." *See id.* The plain text of the statute is clear that Ohio robbery can be committed without obtaining something of value from another person. We have a "reasonably clear and principled course" to resolving this case without certification, *see id.*, and we can and should resolve it on the merits. And we do not countenance an approach that would necessitate searching for purported trends in state cases and,

in every case where a handful of decisions might suggest that the statute is not applied as broadly as it plainly reaches, certifying the question to the state supreme court.  The categorical approach does not invite such a freewheeling inquiry that requires the analysis of state prosecutorial habits that certification here would condone.  *See Taylor*, 596 U.S. at 857.

**B.**

Our final inquiry is whether Cervenak's robbery convictions are broader than Guidelines robbery.  Again, the answer is yes.

Ohio robbery does not categorically match Guidelines robbery just because those offenses share the same name.  *Taylor*, 495 U.S. at 588–89.  We look only at the elements of the offenses.  *Id.*  We discussed above the elements of Ohio robbery when a defendant's charging document fails to specify a particular theft offense.  For Guidelines robbery, we use the generic meaning of robbery because the 2021 version of the Guidelines does not define robbery.  *Camp*, 903 F.3d at 600, 602. We have held previously that generic robbery involves: (1) the "misappropriation of property under circumstances involving immediate danger to the person," *United States v. Yates*, 866 F.3d 723, 734 (6th Cir. 2017) (quotation omitted), (2) by a defendant acting at least recklessly, *Ivy*, 93 F.4th at 944.[6]

Ohio robbery does not always require the misappropriation of property. "'[M]isappropriation' is ordinarily understood as the unlawful taking or use of another person's property." *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 461–62 (5th Cir. 2003); *see also* Misappropriation, *Black's Law Dictionary* (12th ed. 2024) ("The application of another's property or money dishonestly to one's own use.").  Just as Ohio robbery without a specified predicate offense does not require a defendant to obtain something of value from another, it also does not require a defendant to unlawfully take or use the property of another.

A few examples prove the point.  As discussed above, a defendant commits § 2911.02(A)(2) robbery by inflicting, attempting to inflict, or threatening to inflict physical harm on another person while committing, or attempting to commit, a theft offense.  And recall

---

[6]Because we hold that Ohio robbery does not require the misappropriation of property, we need not consider whether Ohio robbery requires a defendant to have a mental state of at least recklessness.

that we look to the least serious conduct. Suppose an offender's robbery conviction is predicated on the theft offense of trespassing in a habitation under Ohio Revised Code § 2911.12(B), which provides: "No person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person . . . is present or likely to be present." The offender commits robbery the moment he inflicts, attempts to inflict, or threatens to inflict physical harm on another person while in that person's home. He does not have to take or use that person's property to satisfy the elements of Ohio robbery.

Or suppose a robbery conviction is predicated on the theft offense of cheating. The cheating statute provides, in pertinent part: "No person shall knowingly . . . [e]ngage in conduct designed to corrupt the outcome of an athletic or sporting event." *Id.* § 2915.05(B)(2). So if a person threatens to inflict harm on someone else to "corrupt" a football game, he has committed robbery. But he has not necessarily taken or used another person's property.

One last example—suppose a robbery conviction is predicated on the theft offense of personating an officer. The personating-an-officer statute provides: "No person, with purpose to defraud or knowing that he is facilitating a fraud, or with purpose to induce another to purchase property or services, shall personate a law enforcement officer, or an inspector, investigator, or agent of any governmental agency." *Id.* § 2913.44(A). Again, even if an offender inflicts, attempts to inflict, or threatens to inflict physical harm while personating a government official, he does not necessarily unlawfully take or use the property of another. For instance, in *State v. Powell*, the Ohio Court of Appeals upheld the conviction of a chiropractor for personating a police officer. 731 N.E.2d 1170, 1171–72 (Ohio Ct. App. 1999). There, the chiropractor made calls to "accident victims in order to solicit potential patients" by representing that he worked with the police department. *Id.* at 1170–71. The court did not mention a requirement that the defendant take or use another person's property when sustaining the conviction. So even if the defendant threatened physical harm while making the solicitations (which would turn the crime into robbery), there would still be no misappropriation.

Ohio robbery thus captures more conduct than generic robbery, meaning there is no categorical match. Judge Ritz and Judge Thapar push back on this analysis.

**1.**

Judge Ritz, although he does not concede that generic robbery involves the misappropriation of property, argues that his definition of misappropriation would sweep in all the theft offenses. This would make Ohio robbery a categorical match for Guidelines robbery. Rather than use the ordinary meaning of misappropriation, Judge Ritz relies on the following definition of "misappropriate"—"to wrongly make use of without authority or right." Ritz Dissent at 35.

But even using Judge Ritz's definition, not all the Ohio theft offenses involve misappropriation. For example, cheating, *see* Ohio Rev. Code Ann. § 2915.05(B), does not mandate the wrongful use of property. The same rationale applies to the personating-an-officer theft offense, which also does not require an offender to wrongly use someone else's property. In *State v. Powell*, the defendant violated the personating-an-officer statute by "making solicitation calls to accident victims" while "stat[ing] that he was a police officer." 731 N.E.2d at 1171.

Judge Ritz also argues that Cervenak must identify cases where defendants were convicted of robbery "for conduct extending beyond 'misappropriation.'" Ritz Dissent at 35. But as we explained in Part IV.A.1 above, because the plain language of the Ohio robbery statute shows the statute applies to conduct broader than generic robbery, Cervenak did not need to explore, or provide evidence of, the State's prosecutorial habits.

**2.**

Judge Thapar bases his argument that Ohio robbery is narrower than generic robbery on two contentions: (1) the notion that the Ohio robbery statute is not twice divisible, and (2) his own broad definition of generic robbery.

First, as discussed above, Judge Thapar believes that the theft offenses are means, not elements, of robbery. Therefore, he argues, the robbery statute has only one level of divisibility. The plain text of the statute,[7] Ohio caselaw,[8] Ohio's pattern jury instructions,[9] our precedent,[10] the government, Cervenak, and Judge Ritz all rebuff Judge Thapar's argument. And because the Ohio robbery statute is doubly divisible, Judge Thapar's Ohio-robbery-is-Guidelines-robbery argument falls apart.

Second, Judge Thapar argues that many states have definitions that rely on "theft offenses" that are distinct from ordinary theft. Thus, he asserts that this court's conception of generic robbery should encompass robbery predicated on a wide range of theft-adjacent offenses. But neither this court nor any of our sister circuits have adopted his approach. Some courts define generic robbery like we do, as "the misappropriation of property under circumstances involving immediate danger to the person." *United States v. Fluker*, 891 F.3d 541, 547 (4th Cir. 2018) (quotation omitted); *United States v. Prigan*, 8 F.4th 1115, 1120 (9th Cir. 2021) (same); *United States v. Montiel-Cortes*, 849 F.3d 221, 226 (5th Cir. 2017) (per curiam) (same); *United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016) (same). Others define it as "the taking of property from another person or from the immediate presence of another by force or by intimidation." *United States v. Scott*, 14 F.4th 190, 196 (3d Cir. 2021) (quotation omitted); *United States v. Eason*, 953 F.3d 1184, 1193 (11th Cir. 2020) (same); *United States v. Moore*, 916 F.3d 231, 239 (2d Cir. 2019) (same); *United States v. Ball*, 870 F.3d 1, 5 (1st Cir. 2017) (same). The Seventh Circuit defines generic robbery as "the taking of property from a person by force or the threat of force." *United States v. Carr*, 107 F.4th 636, 646 (7th Cir. 2024) (quotation omitted). But none defines it like Judge Thapar.

The overwhelming weight of circuit caselaw to the contrary notwithstanding, Judge Thapar (and Judge Ritz) points to Ohio robbery's similarity to other states' robbery statutes, insisting that we cannot define generic robbery in a way that excludes how many states define

---

[7]Ohio Rev. Code Ann. §§ 2911.02, 2913.01(K).

[8]*Tolliver*, 19 N.E.3d at 874.

[9]2 CR Ohio Jury Instructions 511.02.

[10]*Butts*, 40 F.4th at 770–71; *cf. Wilson*, 978 F.3d at 997–98.

the offense. Although his premise is true, our decision here—like the decisions of several other circuits that define generic robbery similarly—does not restrict the definition of generic robbery. Rather, in the cases where the predicate offense is not specified, we presume the least culpable conduct criminalized by the statute, which does not necessarily involve misappropriating property. Where the *Shepard* documents specify one of the many predicate theft offenses that involve the misappropriation of property, that offense will fit within the generic definition. Our approach ensures that, before substantially enhancing a defendant's sentence, the predicate conviction is one for which the factfinder "necessarily found" the defendant guilty of a theft offense captured by the generic definition of robbery. *Descamps*, 570 U.S. at 272. That is what the categorical approach requires.

Without law on his side, Judge Thapar resorts to scare tactics—he claims Americans will suffer if we do not see things his way. In so doing, he "strike[s] a tone of chilling doom that is wholly disproportionate to what" we do today. *See Trump v. United States*, 603 U.S. 593, 637 (2024).

\* \* \*

In sum, Cervenak's robbery convictions are not "crimes of violence" under the Guidelines. The district court therefore erred in applying the career-offender guideline to enhance Cervenak's Guidelines range.

## V.

For these reasons, we **VACATE** Cervenak's sentence and **REMAND** for resentencing consistent with this opinion. We also **GRANT** Cervenak's and the government's motions to take judicial notice.

---

**CONCURRENCE / DISSENT**

---

NALBANDIAN, Circuit Judge, concurring in part and dissenting in part.  I write briefly to explain my position in this difficult case.  For reasons that I'll discuss below and as discussed by Judge Thapar in dissent, I believe that we should have certified the question of whether an Ohio robbery indictment that does not list a specific "theft offense" should be regarded as charging theft under Ohio Revised Code § 2913.02(A).  But a majority of my colleagues disagree.  So I join all but Part IV(A)(2) and footnote two of the majority opinion because I agree with its reading of Ohio law—such that it has the better view on applying the categorical approach.

We should have certified for two reasons.  First, although I don't agree with the government's reading of *State v. Smith*, 884 N.E.2d 595 (Ohio 2008), I believe Ohio law is uncertain enough on this point to warrant certification.  And second, like Judge Thapar in dissent, I believe that there may be possible constitutional problems with a state-court indictment that fails to specify a theft offense.  Certification would allow the Ohio Supreme Court the opportunity to address these issues.

Start with *Smith*.  We must figure out what state law criminalizes to apply the categorical approach.  As far as I'm concerned, we start with state criminal statutes, given the modern uneasiness with common-law crimes.  *See United States v. Lanier*, 73 F.3d 1380, 1391 (6th Cir. 1996).  And here, I agree with the majority's explanation and interpretation of Ohio Revised Code § 2911.02.  This statutory scheme might seem a little odd to us, but it's Ohio's prerogative as a separate sovereign to define crimes as it wishes.  *See Commonwealth of Puerto Rico v. Sanchez Valle*, 579 U.S. 59, 68–69 (2016).

But we don't necessarily stop there.  As with the Rules of Decision Act and the *Erie* doctrine, federal courts are often asked to answer state-law questions.  *See Smith v. Gen. Motors LLC*, 988 F.3d 873, 878–79 (6th Cir. 2021).  And state-court decisions play a pivotal role in this process.  *See In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005).  Because "state courts

are the ultimate expositors" of that state's law, their interpretations can narrow or broaden the meaning of state statutes. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). These interpretations can be the difference between a categorical match or not. *United States v. Taylor*, 596 U.S. 845, 858–59 (2022).

In this context, the Supreme Court has warned against artificially broad interpretations of state law that take a state statute from categorical match to mismatch. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013). In those theoretical situations, the defendant must cite "at least . . . his own case or other cases" that support the broad interpretation. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). In other words, the broad interpretation must be "a realistic probability, not a theoretical possibility." *Id.*

But I don't think this is one of those cases. We aren't imagining a law-school hypothetical that might fit within the broad language of the statute. Instead, Ohio has chosen to include predicate "theft offenses" within its robbery statute that, naturally interpreted, do not involve the taking of property from another. Ohio Rev. Code. § 2913.01(K). This comes from the text of the statutes. For example, Ohio's aggravated burglary and burglary statutes have nothing to do with taking someone's property. *Id.* §§ 2911.11, 2911.12. Nor would it seem, does unlawfully using a telecommunications device or cheating at sports. *Id.* §§ 2913.06, 2915.05. But the plain language of the robbery statute says you commit robbery if you do *any* of these theft offenses while harming someone or threatening to harm someone. *Id.* § 2911.02. And that's apparent from the language of the statutes—not some unnatural interpretation of the words or doctrinal convolution.

So when an Ohio indictment charges someone with a robbery without specifying an underlying theft offense, it could refer to a crime that did not involve taking anyone's property. And that's the way the categorical approach works. No matter what we know about what the defendant actually did—we compare the Guidelines offense with the "least culpable conduct" criminalized under the state statute. *United States v. Havis*, 927 F.3d 382, 385 (6th Cir. 2019) (en banc) (per curiam).

The government claims that the Ohio Supreme Court's *Smith* decision takes care of this problem by providing the needed narrowing construction of Ohio robbery in cases when the exact theft offense is not specified in the indictment. It says that the Ohio Supreme Court has held that an indictment with an unspecified theft offense should be read as charging § 2913.02(A) as the predicate. But I disagree.

That wasn't the issue in *Smith*, which addressed whether an individual may be convicted of a lesser-included offense not specified in the indictment. 884 N.E.2d at 599. In doing so, the Ohio Supreme Court needed to answer whether "the greater offense [could], as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed." *Id.* (quoting *State v. Deem*, 533 N.E.2d 294, 298 (Ohio 1988)). But applying this test to the robbery statute posed a problem because the theft offense element could "be proved alternatively—as theft or attempted theft." *Id.* at 598. The Ohio Supreme Court determined that "when a statute sets forth mutually exclusive ways of committing the greater offense, a court is required" to determine whether the greater offense requires committing the lesser offense for "each alternative method of committing the greater offense." *Id.* at 599.

So the Ohio Supreme Court held that theft is "a lesser included offense of robbery." *Id.* But it did not hold that theft is the only lesser-included offense of robbery. *See State v. Castle*, 86 N.E.3d 813, 816–17 (Ohio Ct. App. 2017) (applying *Smith* to hold that receiving stolen property under Ohio Revised Code § 2913.51(A) is a lesser included offense of robbery). Indeed, the government's theory that *Smith* held that robberies categorically involve completed or attempted theft under § 2913.02(A) asks us to "read judicial opinions in a vacuum."[1] *Faber v. Ciox Health, LLC*, 944 F.3d 593, 598 (6th Cir. 2019). While *Smith* at times uses sweeping language, "we don't read precedents like statutes" and instead must evaluate the text of the opinion based on the reasoning and legal question at issue. *Herr v. U.S. Forest Serv.*, 803 F.3d

---

[1]Part of the government's confusion comes from how the "lesser included offense" test applies to "a statute written in the alternative, such as robbery." *Castle*, 86 N.E.3d at 816. A statute written in the alternative "creates a separate offense for each alternative." *Smith*, 884 N.E.2d at 599 (quoting *Pandelli v. United States*, 635 F.2d 533, 537 (6th Cir. 1980)). In *Smith*, the Ohio Supreme Court did not hold that theft—as defined in § 2913.02(A)—will always be the lesser included offense of *any robbery* under § 2911.02. Instead, it held that "it would be impossible to ever commit a *robbery by theft* without also committing a theft." *Id.* (emphasis added). Just like it would be impossible to ever commit a robbery by receiving stolen property without also committing the crime of receiving stolen property. *Castle*, 86 N.E.3d at 817. So statutory theft isn't always the lesser included offense of robbery.

809, 819 (6th Cir. 2015); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 426 (2024) (Gorsuch, J., concurring).  Extending statements from the Ohio Supreme Court far beyond their original scope does little to safeguard the interests of federalism.  And when deciding matters of state law, we should tread lightly.

So why certify?  Even though the best reading of the statute does not track the government's view, I believe that there's enough uncertainty (both because of *Smith* and other cases) to warrant certification.  It appears to me that Ohio robbery prosecutions without a specified theft offense might always involve the taking of property—even though no Ohio court has held that the robbery statute always requires such a taking.  The government points to several Ohio cases that seem to presume that theft, as defined in § 2913.02(A), is the typical predicate "theft offense."  *See, e.g.*, *State v. Gunn*, No. L-20-1034, 2021 WL 2701292, at *6 (Ohio Ct. App. June 30, 2021).  But those same courts have noted that § 2913.01(K)'s definition of theft offense "includes any" of the "enumerated offenses," even those without a taking.  *State v. Singleton*, No. 28457, 2020 WL 2466913, at *2 (Ohio Ct. App. May 13, 2020).  When the state court precedents are unclear, "discretion, to say nothing of respect for a co-equal sovereign, is the better part of valor."  *See Carey v. Wolnitzek*, 614 F.3d 189, 209 (6th Cir. 2010).  Given the unsettled nature of Ohio caselaw on this issue, I'd certify.

Additionally, I think that not having a specified, predicate theft offense in a criminal indictment—without more—might create constitutional concerns.  *See Russell v. United States*, 369 U.S. 749, 765 (1962).  After all, where is the fair notice to the defendant of what he is accused of doing?  Where is the "statement of the facts and circumstances" that "inform the accused of the specific offense, coming under the general description, with which he is charged"?  *Id.* (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)).  True, in *Smith*, the to-wit clause of the indictment told the defendant that she was likely accused of theft, as defined by § 2913.02(A).  But Cervenak's indictment isn't as clear.  This may or may not be a realistic concern, but letting the Ohio Supreme Court weigh in could remove any lingering constitutional doubt.  So also for that reason, I would support certification.

Finally, as an aside, I will make the perhaps obvious point that district judges retain the ability to impose an appropriate sentence.  In other words, whether a past conviction constitutes a "crime

of violence" only impacts a defendant's career-offender status for calculating the Guidelines range. U.S.S.G. § 4B1.1(a). But the range is purely "advisory." *United States v. Hensley*, 110 F.4th 900, 907 (6th Cir. 2024) (quoting *United States v. Booker*, 543 U.S. 220, 245 (2005)). While the sentencing court "must include the Guidelines range in the array of factors warranting consideration," its recommendation is not binding. *United States v. Thomas-Mathews*, 81 F.4th 530, 541–42 (6th Cir. 2023) (quoting *Kimbrough v. United States*, 552 U.S. 85, 91 (2007)). And the sentencing court has both the prerogative and responsibility to impose an appropriate sentence that is "sufficient, but not greater than necessary" to account for the factors Congress set forth in 18 U.S.C. § 3553(a). The advisory-Guidelines range does nothing to limit that discretion. For this reason, a court "may vary from the Guidelines [range] for policy reasons alone." *United States v. Allen*, 93 F.4th 350, 359 (6th Cir. 2024).

Going forward, today's holding instructs sentencing courts in this circuit that Ohio's robbery statute is not a categorical match for Guidelines extortion or generic robbery—as relevant to the version of the Guidelines in effect at the time of Cervenak's federal conviction. So sentencing courts must follow this decision in determining whether a defendant is a career offender under the Guidelines. But today's holding only addresses the judge's calculation of the advisory-Guidelines range. Once that has been properly determined, the district judge still has discretion to impose a sentence outside that range based on everything considered during sentencing.

In Cervenak's case, the district court's discretion was only limited by the language of the statutes. Given the quantity of drugs in his possession, the maximum term of incarceration for each of Cervenak's two federal drug-trafficking convictions was twenty years. 21 U.S.C. § 841(a)(1), (b)(1)(C). And the maximum for his federal firearm conviction was ten years. 18 U.S.C. §§ 922(g)(1), 924(a)(2). It is these statutes, and not the Guidelines range, that cabin the possible term of imprisonment.

At resentencing, the district court must apply our holding and so find that Cervenak is not a career offender under § 4B1.1(a) of the Guidelines. This conclusion will impact both the offense level and the final Guidelines range. But it is here that guidance from our holding runs out. Once the advisory range has been recalculated, the district judge must still conduct an

"individualized assessment based on the facts presented" and considering the relevant § 3553(a) factors. *United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007) (quoting *United States v. Gall*, 552 U.S. 38, 50 (2007)). Of which the Guidelines range is one among many (albeit an important one). 18 U.S.C § 3553(a)(4)(A).

So although we hold that Cervenak's Ohio robbery conviction does not qualify him for the career-offender enhancement under the Guidelines, that does not mean that his many prior convictions will have no relevance for the other § 3553(a) factors. Indeed, if the sentencing court believes that Cervenak's unknown underlying theft offense was a regular theft, the court could reject the categorical approach and apply something akin to the career-offender enhancement as a matter of its residual discretion. The growing list of judges who have criticized the categorical approach—as highlighted by Judge Griffin in his dissent—shows that such a policy-based variance would be eminently reasonable.

———————————————

**CONCURRENCE / DISSENT**

———————————————

RITZ, Circuit Judge, concurring in part and dissenting in part. I agree with the majority that Ohio's robbery statute is twice divisible—first by the three subsections of Ohio Rev. Code § 2911.02, and then by the underlying theft offenses cross-referenced in Ohio Rev. Code § 2913.01(K). *See United States v. Butts*, 40 F.4th 766, 770-71 (6th Cir. 2022). I also agree that in cases such as Cervenak's, where the state-court documents do not specify an underlying theft offense, we must assume that any of the underlying theft offenses could have been the predicate crime. *See Moncreiffe v. Holder*, 569 U.S. 184, 190-91 (2013); *United States v. Burris*, 912 F.3d 386, 406 (6th Cir. 2019) (en banc). I further agree with the majority that not all of Ohio's predicate theft offenses require a defendant to "obtain[] something of value from another," so Cervenak's robbery conviction cannot qualify as extortion under the guidelines. *See* U.S.S.G. § 4B1.2. And finally, I agree that there is no need to certify any question to the Ohio Supreme Court. *See Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (citation omitted).

But for me, there is a straightforward way to resolve this case. We should hold, as the district court found, that Cervenak's robbery conviction qualifies as robbery under the guidelines enumerated-offenses clause.

I.    Defining generic robbery

To determine whether a prior conviction qualifies as a crime of violence under the enumerated-offenses clause, we "compare the elements of the offense in question with the elements of the 'generic' enumerated offense to determine whether the two are a categorical match." *United States v. Camp*, 903 F.3d 594, 600 (6th Cir. 2018) (citing *Descamps v. United States*, 570 U.S. 254, 257 (2013)). If the conduct criminalized by the offense in question is broader than the conduct covered by the generic definition, the offense is not a crime of violence. *United States v. Yates*, 866 F.3d 723, 733 (6th Cir. 2017).

A key step, then, is to define the generic enumerated offense. At the time of Cervenak's sentencing, the guidelines listed "robbery" as an enumerated offense but did not define it. *See* U.S.S.G. § 4B1.2(a)(2) (2022).[1] Relying on Supreme Court decisions addressing the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), we have held that to determine the generic definition of an enumerated offense not otherwise defined in the guidelines, we "survey[] how the crime is described across jurisdictions, as well as consult[] sources such as the Model Penal Code." *United States v. Rede-Mendez*, 680 F.3d 552, 556 (6th Cir. 2012) (citing *Taylor v. United States*, 495 U.S. 575, 598 & n.8 (1990)); *cf. Camp*, 903 F.3d at 600 (citing *Descamps*, 570 U.S. at 257).

Applying this approach, we have defined generic robbery as the "misappropriation of property under circumstances involving immediate danger to the person." *Yates*, 866 F.3d at 734. That definition, which marries a force element to a theft element, derives from a 2006 Fifth Circuit opinion, which itself relied on a criminal-law treatise and a survey of state robbery statutes. *See United States v. Santiesteban-Hernandez*, 469 F.3d 376, 380 (5th Cir. 2006) (citing Wayne R. LaFave, *Substantive Criminal Law* § 20.3 intro., (d)(2) (2d ed. 2003)).

As we and the Fifth Circuit have observed, states have implemented the force element of the generic robbery definition in two main ways. *Yates*, 866 F.3d at 733; *Santiesteban-Hernandez*, 469 F.3d at 380. The majority of states require property to be taken "by means of force or putting in fear," while a minority of states and the Model Penal Code define the immediate-danger requirement "in terms of 'bodily injury' or 'committing violence' or 'physical harm.'" *Yates*, 866 F.3d at 733 (quoting *Santiesteban-Hernandez*, 469 F.3d at 380; *United States v. Lockley*, 632 F.3d 1238, 1243 (11th Cir. 2011)). The latter is a "narrower" definition, in that the minority "jurisdictions require something more than mere intimidation or undifferentiated fear; the defendant must directly threaten the victim's bodily integrity." *Lockley*, 632 F.3d at 1243-44. In any event, "[t]he difference in the majority and minority definitions is slight," and we have declined to adopt one reading over the other. *Yates*, 866 F.3d at 733 (quoting *Lockley*,

---

[1]A definition of robbery was added to the career-offender guideline in November 2023. *See* U.S.S.G. § 4B1.2(e)(3) (2024). The Sentencing Commission made this change to clarify that federal Hobbs Act robbery convictions are crimes of violence, and in response to court of appeals decisions holding otherwise. *See* U.S.S.G. app. C, amt. 822; *see also* 18 U.S.C. § 1951(b)(1).

632 F.3d at 1244); *see Camp*, 903 F.3d at 601; *see also Lockley*, 632 F.3d at 1244 (explaining that "the fear or intimidation contemplated by the majority definition in nearly all instances is the fear of bodily harm").

Many circuits have adopted the same definition of generic robbery we adopted from the Fifth Circuit. *See, e.g.*, *United States v. Gattis*, 877 F.3d 150, 156-57 (4th Cir. 2017); *United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016); *United States v. Becerril-Lopez*, 541 F.3d 881, 891 (9th Cir. 2008). At least two circuits have adopted the "majority approach" and define generic robbery as "the taking of property from another person or from the immediate presence of another person by force or intimidation." *Lockley*, 632 F.3d at 1244; *United States v. Walker*, 595 F.3d 441, 446 (2d Cir. 2010).

The bottom line is that courts, including this one, have defined generic robbery to include two primary components: a theft element and a force element.

II.     Mens rea

Recently, and for the first time, we added a mens rea element to the definition of generic robbery. *United States v. Ivy*, 93 F.4th 937, 944 (6th Cir. 2024). In *Ivy*, we stated that the force or fear element used by the majority of states "suggests a mens rea of purposefulness." *Id.* (quoting *United States v. Beard*, No. 22-3398, 2023 WL 4230048, at *3 (6th Cir. May 22, 2023)). We also stated that the bodily-injury element used by a minority of states and the Model Penal Code "suggest[s] a mens rea of recklessness." *Id.* (quoting *Beard*, 2023 WL 4230048, at *3). Thus, we concluded, "generic robbery has a mens rea of at least recklessness as to its force requirement." *Id.* at 946.

I am not convinced that generic robbery requires a mens rea of recklessness as to the force element. First, many states' robbery statutes do not specify a mens rea for this element.[2] *See, e.g.*, Cal. Penal Code § 211; Miss. Stat. § 97-3-73; Wash. Stat. § 9A.56.190; *see also, e.g.*, Ark. Code Ann. § 5-12-102; Colo. Stat. § 18-4-301; Ill Stat. 5/18-1(a); Fla. Stat. § 812.13 (providing a mens rea requirement for one element of robbery, but not the force or physical harm

---

[2]The new guidelines robbery definition also does not identify a mens rea requirement. *See* U.S.S.G. § 4B1.2(e)(3) (2024).

element). Some of these states require a recklessness mens rea via operation of statute. *See*, *e.g.*, Ark. Code Ann. § 5-2-203(b); 720 Ill. Comp. Stat. Ann. 5/4-3. Crucially, however, many do not. *See* S.C. Code Ann. § 16-11-325 (defining robbery as a common law offense); *State v. Wilkerson*, 738 S.E.2d 32, 38 (W. Va. 2013); *People v. Anderson*, 252 P.3d 968, 972 (Cal. 2011); *State v. Day*, 925 A.2d 962, 977-78 (R.I. 2007); *State v. Wright*, 608 S.W.3d 790, 796 (Mo. Ct. App. 2020); *State v. Moulin*, 450 P.3d 846 (Kan. Ct. App. 2019) (table); *State v. Lewis*, 233 P.3d 891, 896 (Wash. App. 2010).

The lack of a mens rea requirement in these states does not mean that defendants can commit robbery accidentally. They must still commit the underlying theft offense with a culpable state of mind. *See, e.g.*, *Anderson*, 252 P.3d at 995-96; *People v. Miller*, 661 N.E.2d 1358, 1362-63 (N.Y. 1995); *see also State v. Tolliver*, 19 N.E.3d 870, 874 (Ohio 2014) (noting that Ohio robbery "always includes the mens rea of the predicate theft offense"). This approach of requiring a felonious intent for the underlying theft offense but not for the force element traces back to the common law. *See* 2 William Oldnall Russell, *A Treatise on Crimes and Indictable Misdemeanors*, 64 (2d ed. 1828); Wm. L. Clark & Wm. L. Marshall, *A Treatise on the Law of Crimes* 559 (Herschel Bouton Lazell ed., 2d ed. 1905); 4 William Blackstone, *Commentaries on the Laws of England* 239, 242 (1769).

It would be odd to require recklessness for the force element of generic robbery when so many states decline to do so. In an analogous context, when assessing whether particular state robbery convictions qualified as "violent felonies" under the ACCA, the Supreme Court cautioned against construing the federal sentencing enhancement "in a way that would render it inapplicable in many States." *Stokeling v. United States*, 586 U.S. 73, 81 (2019). The same principle applies here.

Second, and relatedly, our pre-*Ivy* precedent defining generic robbery did not mention a recklessness requirement. *See Johnson v. United States*, 64 F.4th 715, 722 (6th Cir. 2023); *Camp*, 903 F.3d at 601; *Yates*, 866 F.3d 723 at 734. *Ivy* discerned such a requirement in *Yates*'s summary of states' definitional approaches to robbery. But, as noted above, just because the majority of states define the force requirement as using "means of force or putting in fear" does not mean that those states require that conduct to occur intentionally or purposefully. And just

because a minority of states and the Model Penal Code define the force requirement "in terms of 'bodily injury' or 'committing violence' or 'physical harm'" does not mean that those states require a mens rea of recklessness as to that element.

Third, *Ivy*'s holding as to recklessness is inconsistent with the Fifth Circuit decision that we used to define generic robbery in the first place. The Fifth Circuit has confirmed that its precedent does not require a particular mens rea as to the force element of generic robbery. *United States v. Adair*, 16 F.4th 469, 471 (5th Cir. 2021) (citing *Santiesteban-Hernandez*, 469 F.3d at 378-81). The Ninth Circuit has likewise concluded there is no mens rea requirement for the force element. *United States v. Flores-Mejia*, 687 F.3d 1213, 1215-16 (9th Cir. 2012). And no other court of appeals has imposed a mens rea requirement like ours.

For these reasons, I would not add a recklessness requirement to the force element of generic robbery. I would instead adhere to our pre-*Ivy* case law on that point.

III.     Comparing Ohio robbery to generic robbery

The next question is whether an Ohio robbery conviction like Cervenak's qualifies as generic robbery. For all the debate in this case over how to apply the categorical approach, everyone agrees that at the first level of divisibility, Cervenak was convicted under subsection (A)(2) of the Ohio robbery statute. That provision makes it a crime to "[i]nflict, attempt to inflict, or threaten to inflict physical harm on another" while "attempting or committing a theft offense or in fleeing immediately after the attempt or offense." Ohio Rev. Code § 2911.02(A)(2). At the second level of divisibility, as the majority opinion explains, we assume that any of the underlying theft offenses listed in Ohio Rev. Code § 2911.02(K) could have served as the predicate for Cervenak's conviction.

A.     Force element

Remember, though, that whatever the underlying theft offense in Cervenak's case was, Cervenak necessarily "inflicted, attempted to inflict, or threatened to inflict physical harm on another" person while committing or attempting the offense. Ohio defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or

duration." *Id.* § 2901.01(A)(3). This physical-harm requirement is enough to satisfy the force element of generic robbery. *See, e.g.*, *State v. Brown*, 237 N.E.3d 162, 167 (Ohio 2024) (affirming that holding a third party at gunpoint threatens physical harm for the purpose of (A)(2)). In fact, Ohio requires even more culpability as to the force element than the majority of states do. *See Lockley*, 632 F.3d at 1243. And since we should not require any particular mens rea for this element, it does not matter whether Ohio requires recklessness. *Compare Tolliver*, 19 N.E.3d at 874-75 (holding that the force element of Ohio robbery does not require a culpable state of mind); *with State v. Cunningham*, No. 21AP-470, 2024 WL 2723445, at *13-15 (Ohio Ct. App. May 28, 2024) (holding that recklessness is required, due to a post-*Tolliver* change in Ohio statutory law).

## B.    Theft element

That leaves the crux of the issue, as I see it: whether any of the potential underlying theft offenses in the Ohio robbery statute extend further than the theft component of generic robbery. Again, we have defined the theft component as "misappropriation of property"—a definition we borrowed from another circuit. It is not clear to me that this is the right or only way to define the theft element, especially considering (as noted below) those are not the words states tend to use when defining robbery. But even if we use "misappropriation" as the relevant definition, Cervenak's conviction qualifies as a crime of violence.

The Ohio statute defines "theft offense" to encompass dozens of crimes. *Yates*, 866 F.3d at 734; Ohio Rev. Code § 2913.01(K)(1). Some of these predicate offenses fit squarely in the category of "misappropriation." *See, e.g.*, Ohio Rev. Code § 2913.02 (theft); Ohio Rev. Code § 2913.03 (unauthorized use of a vehicle). Others, though, are further afield. For example, the statute lists trespass, passing bad checks, and altering liquor control labels as potential predicate theft offenses. *See, e.g.*, Ohio Rev. Code § 2911.13 (breaking and entering); Ohio Rev. Code § 2913.11 (passing bad checks); Ohio Rev. Code § 2913.31 (forgery); Ohio Rev. Code § 2913.32 (criminal simulation, including fraudulently altering liquor control labels and deceptively retouching audiovisual material). Whether these qualify as "misappropriation" is certainly a closer call than whether "theft" qualifies. Of course, one interpretive challenge we face is that we are not applying a textual definition of "misappropriation." Rather, we are interpreting and

applying a term set out in the case law, and the case law provides little guidance on what the term means.

But it is not hard to conceive of a definition of misappropriation that sweeps in all of Ohio's predicate theft offenses. *See Misappropriation*, *Black's Law Dictionary* (12th ed. 2024) ("The application of another's property or money dishonestly to one's own use"); *see also Merriam-Webster's Collegiate Dictionary* (11th ed. 2019) (defining "misappropriate" as "to appropriate wrongly," and defining "appropriate" as "to take or make use of without authority or right"). If misappropriation is "to wrongly make use of without authority or right," then offenses like altering liquor control labels or deceptively retouching audiovisual equipment would meet the definition, as both involve using property beyond one's scope of authority. The same is true for forgery, which depends on making a false claim of authority over a writing, or breaking and entering, which involves making wrongful use of another's dwelling. *See* Ohio Rev. Code § 2911.13; Ohio Rev. Code § 2913.31.

Of course, we could try to hypothesize scenarios in which a defendant could commit an (A)(2) Ohio robbery in a way that extends further than generic robbery. Could he, for instance, tamper with records, or pass a bad check, or deceptively retouch audiovisual material in a way that would not constitute "misappropriation"—while inflicting, attempting, or threatening physical harm at the same time? It seems unlikely. But regardless, the Supreme Court has steered us away from using "legal imagination" in this fashion. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). To show overbreadth a defendant must show "a realistic probability, not a theoretical possibility, that a State would apply its statute to conduct that falls outside" the relevant federal definition. *E.g.*, *Moncrieffe*, 569 U.S. at 191. And to do so, he "must at least point to his own case or other cases in which the state courts in fact did apply" the statute to conduct that is outside the federal definition. *Duenas-Alvarez*, 549 U.S. at 193; *see also Cradler v. United States*, 891 F.3d 659, 669 (6th Cir. 2018) (holding that courts must look to state case law to assess the full range of conduct encompassed by criminal statutory elements). Here, neither Cervenak nor the majority has identified any examples of convictions under subsection (A)(2) for conduct extending beyond "misappropriation." *Cf. State v. Dixon*, No. 89-CA-22, 1990 WL 94612, at *2-3 (Ohio Ct. App. June 20, 1990) (upholding a robbery conviction under

subsection (A)(3) of the Ohio robbery statute where forgery was the predicate theft offense). That is not just significant but, in my view, determinative.

As a final observation about the scope of Ohio robbery's theft element, it bears noting that many states, like Ohio, have robbery statutes that define the theft element to encompass a wide range of conduct. *See, e.g.*, Tex. Penal Code § 29.02 (defining a predicate theft offense as "Chapter 31 Theft," which lists twenty related theft offenses, including advertising devices to unscramble encrypted signals, *id.* § 31.03, and communicating a trade secret, *id.* § 31.05(b)(3)); Mich. Penal Code § 750.530 (defining robbery as "in the course of committing a larceny," which includes offenses like Mich. Penal Code § 750.530, "injuring a fruit tree"). Whether and how those statutes are divisible, and whether the various permutations of those statutes qualify as generic robbery under the majority's analysis, are issues beyond the scope of this case.

But the fact that Ohio's robbery statute is not an outlier should give us pause in holding that Ohio physical-harm robbery is not robbery under the guidelines. After all, the definition of a guidelines enumerated offense must "be capacious enough to cover the states' varied formulations of those elements." *United States v. Brown*, 957 F.3d 679, 685 (6th Cir. 2020) (citing *Quarles v. United States*, 587 U.S. 645, 653-54 (2019)); *see also id.* at 686-97 (generic definition must give states "flexibility" and "'breathing space'" in defining their state offenses); *Stokeling*, 586 U.S. at 80-82; *United States v. Castleman*, 572 U.S. 157, 167 (2014). Many of our sister circuits have held that robbery statutes that define the theft element in ways similar to Ohio qualify as generic robbery. *United States v. Harrison*, 56 F.4th 1325, 1336 (11th Cir. 2023) (Georgia); *Adair*, 16 F.4th at 470–71 (Texas); *United States v. McCants*, 952 F.3d 416, 429 (3d Cir. 2020) (New Jersey); *United States v. Stovall*, 921 F.3d 758, 761 (8th Cir. 2019) (Arkansas). We should do the same.

IV.    Conclusion

For these reasons, I would hold that Ohio physical-harm robbery is "robbery" and thus a crime of violence under the guidelines. As the majority sees it otherwise, I respectfully dissent on this point.

---

**DISSENT**

---

GRIFFIN, Circuit Judge, dissenting.

I join Judge Thapar's dissent and Sections I through IV of Judge Ritz's dissent. I write to add my voice to the overwhelming list of jurists urging the Supreme Court to discard the absurd, convoluted, and nonsensical categorical approach.

When defendant Tyren Cervenak pulled a gun from his waistband and ordered two people to "give them everything they had," he violently committed two counts of felonious armed robbery in violation of Ohio law. Yet the majority's application of the categorical approach to the Guidelines' career-offender provision renders yet another result divorced from common sense—today we hold that Cervenak's pointing of a gun at his victims does not qualify as a "crime of violence" under U.S.S.G. § 4B1.2(a). Although a higher sentencing guideline is mandated for defendant Cervenak because of his prior crimes of violence, today's decision tells his victims (and the public at large) that Cervenak did not commit crimes of violence because a hypothetical criminal could commit a hypothetical crime that does not fit a generic definition of robbery or extortion. In Judge Thapar's words in his separate writing for the panel, this result is "a testament to the categorical approach's well-documented absurdity." *United States v. Cervenak*, 99 F.4th 852, 863 (6th Cir. 2024) (Thapar, J., concurring); *see also Bains v. Garland*, 2024 WL 3950812, at *5 (6th Cir. Aug. 27, 2024) (Thapar, J., concurring) (collecting cases).

Judge Thapar and I are in good company in decrying the categorical approach. *See, e.g.*, *United States v. Taylor*, 596 U.S. 845, 860–73 (2022) (Thomas, J., dissenting); *Mathis v. United States*, 579 U.S. 500, 520–21 (2016) (Kennedy, J., concurring); *id.* at 536–44 (Alito, J., dissenting). In this regard, I concur in this excellent citation from Judge Michael Park of the United States Court of Appeals for the Second Circuit:

> As a growing number of judges across the country have explained, the categorical approach perverts the will of Congress, leads to inconsistent results, wastes judicial resources, and undermines confidence in the administration of justice. *See, e.g.*, *Mathis v. United States*, — U.S. —, 136 S. Ct. 2243, 2258, 195 L.Ed.2d

604 (2016) (Kennedy, J., concurring) ("[T]oday's decision is a stark illustration of the arbitrary and inequitable results produced by applying an elements based approach to this sentencing scheme."); *id.* at 2268–69 (Alito, J., dissenting) ("The Court's approach calls for sentencing judges to delve into pointless abstract questions. . . .  A real-world approach would avoid the mess that today's decision will produce."); *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1149 (9th Cir. 2020) (Graber, J., concurring) ("I write separately to add my voice to the substantial chorus of federal judges pleading for the Supreme Court or Congress to rescue us from the morass of the categorical approach.  The categorical approach requires us to perform absurd legal gymnastics, and it produces absurd results." (citations omitted)); *United States v. Battle*, 927 F.3d 160, 163 n.2 (4th Cir. 2019) (Quattlebaum, J.) ("Through the *Alice in Wonderland* path known as the 'categorical approach,' we must consider whether Battle's assault of a person with the intent to murder is a crime of violence.  While the answer to that question might seem to be obviously yes, it is not so simple after almost 30 years of jurisprudence beginning with *Taylor*."); *United States v. Escalante*, 933 F.3d 395, 406–07 (5th Cir. 2019) (Elrod, J.) ("In the nearly three decades since its inception, the categorical approach has developed a reputation for crushing common sense in any area of the law in which its tentacles find an inroad. . . .  Perhaps one day the Supreme Court will consider revisiting the categorical approach and setting the federal judiciary down a doctrinal path that is easier to navigate and more likely to arrive at the jurisprudential destinations that a plain reading of our criminal statutes would suggest." (footnotes omitted)); *United States v. Burris*, 912 F.3d 386, 407 (6th Cir. 2019) (en banc) (Thapar, J., concurring) ("A casual reader of today's decision might struggle to understand why we are even debating if ramming a vehicle into a police officer is a crime of violence.  The reader's struggle would be understandable.  The time has come to dispose of the long-baffling categorical approach."); *United States v. Douglas*, 907 F.3d 1, 14 (1st Cir. 2018) (Lynch, J.) ("On the whole, it is at least as practical to allow a jury to parse carefully between crimes based on specific real-world conduct rather than, under a categorical approach, to force judges to be willfully blind to particular facts and thus to go down the rabbit hole to a realm where we must close our eyes as judges to what we know as men and women." (cleaned up)); *United States v. Williams*, 898 F.3d 323, 337 (3d Cir. 2018) (Roth, J., concurring) ("I write separately because of my concern that the categorical approach, along with its offspring, the modified categorical approach, is pushing us into a catechism of inquiry that renders these approaches ludicrous."); *Cradler v. United States*, 891 F.3d 659, 672 (6th Cir. 2018) (Kethledge, J., concurring) ("Whatever the merits of [the categorical] approach, accuracy and judicial efficiency are not among them . . . ."); *United States v. Brown*, 879 F.3d 1043, 1051 (9th Cir. 2018) (Owens, J., concurring) ("All good things must come to an end.  But apparently bad legal doctrine can last forever, despite countless judges and justices urging an end to the so-called *Taylor* categorical approach."); *Ovalles v. United States*, 905 F.3d 1231, 1253 (11th Cir. 2018) (en banc) (Pryor, J., concurring) ("How did we ever reach the point where this Court, sitting en banc, must debate whether a

carjacking in which an assailant struck a 13-year-old girl in the mouth with a baseball bat and a cohort fired an AK-47 at her family is a crime of violence? It's nuts. And Congress needs to act to end this ongoing judicial charade."); *United States v. Chapman*, 866 F.3d 129, 139 (3d Cir. 2017) (Jordan, J., concurring) ("Forcing judges to close their eyes to what is obvious promotes inefficiency and guarantees difficult-to-explain sentences."); *United States v. Valdivia-Flores*, 876 F.3d 1201, 1210 (9th Cir. 2017) (O'Scannlain, J., specially concurring) ("I write separately to highlight how [this case] illustrates the bizarre and arbitrary effects of the ever-spreading categorical approach for comparing state law offenses to federal criminal definitions."); *United States v. Faulls*, 821 F.3d 502, 516 (4th Cir. 2016) (Shedd, J., concurring) ("[T]he categorical approach is the antithesis of individualized sentencing; we do not consider what the individual to be sentenced has actually done, but the most lenient conduct punished by his statute of conviction."); *United States v. Doctor*, 842 F.3d 306, 313 (4th Cir. 2016) (Wilkinson, J., concurring) ("[T]he categorical approach can serve as a protracted ruse for paradoxically finding even the worst and most violent offenses not to constitute crimes of violence."); *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 917 (9th Cir. 2011) (en banc) (Bybee, J.) ("In the twenty years since *Taylor*, we have struggled to understand the contours of the Supreme Court's [categorical approach] framework. Indeed, over the past decade, perhaps no other area of the law has demanded more of our resources.").

*United States v. Scott*, 990 F.3d 94, 126–27 (2d Cir. 2021) (en banc) (Park, J., concurring).

Further, since Judge Park's compilation, many more distinguished jurists have added their voices to our chorus. *See United States v. DeFrance*, 124 F.4th 814, 824–26 (9th Cir. 2024) (Rakoff, J., concurring); *Alejos-Perez v. Garland*, 93 F.4th 800, 809–12 (5th Cir. 2024) (Oldham, J., concurring in the judgment); *United States v. Harris*, 88 F.4th 458, 459–80 (3d Cir. 2023) (Jordan, J., concurring in the denial of rehearing en banc) (order); *United States v. Lopez*, 75 F.4th 1337, 1346 (11th Cir. 2023) (Grant, J., concurring); *Alfred v. Garland*, 64 F.4th 1025, 1066–67 (9th Cir. 2023) (en banc) (McKeown, J., dissenting); *id.* at 1072 n.1 (VanDyke, J., dissenting); *United States v. Jenkins*, 68 F.4th 148, 155 (3d Cir. 2023); *United States v. Morris*, 61 F.4th 311, 317–18 n.9 (2d Cir. 2023); *United States v. Turner*, 47 F.4th 509, 518–19 (7th Cir. 2022); *United States v. Rice*, 36 F.4th 578, 579, 587 (4th Cir. 2022); *United States v. Castillo*, 36 F.4th 431, 444 (2d Cir. 2022); *Valdez v. Garland*, 28 F.4th 72, 85–86 (9th Cir. 2022) (Graber, J., concurring in part and dissenting in part); *United States v. Scott*, 14 F.4th 190, 200–02 (3d Cir. 2021) (Phipps, J., dissenting); *Alfred v. Garland*, 13 F.4th 980, 987–89 (9th Cir. 2021) (England, J., concurring).

Although some common sense may be on the horizon, *see* Sentencing Guidelines for United States Courts, 90 Fed. Reg. 128-01, 128 (proposed Jan. 2, 2025) (proposing the elimination of "the use of the categorical and modified categorical approaches by providing a definition for 'crime of violence' that is based on a defendant's conduct and a definition of 'controlled substance offense' that lists specific federal drug statutes"), any action by the Sentencing Commission will not stop the madness in applying the categorical approach to criminal statutes, *see, e.g.*, *Lowe v. United States*, 920 F.3d 414, 416–20 (6th Cir. 2019) (using the categorical approach to hold rape under Tennessee law is not a violent felony for purposes of the Armed Career Criminal Act's violent-felony enhancement).

Until the Supreme Court reverses its precedent or Congress intervenes, we will forever be uncovering more "strange things," *Taylor*, 596 U.S. at 861 (Thomas, J., dissenting) (quoting L. Carroll, Alice in Wonderland and Through the Looking Glass 227 (J. Messner ed. 1982)), and denying crime victims the justice they deserve.

I respectfully dissent.

---------------

**DISSENT**

---------------

THAPAR, Circuit Judge, dissenting.  The majority decides that when Tyren Cervenak robbed two people at gunpoint, he did not commit a violent crime.  Outside the walls of the Potter Stewart courthouse, robbery is always violent.  Consider a few recent Ohio robbery cases: robbery at gunpoint in a park; running over someone with a car while stealing a diamond ring; and stealing car keys and a wallet after a stabbing.[1]  That's why the majority's decision is not only a blow to common sense, but also to public safety.

The American people—Ohioans in particular—will suffer the consequences.  Violent criminals recidivate more quickly and often than their non-violent counterparts.[2]  Cervenak is a good example:  he committed robbery in 2016, trafficked heroin in 2020, and distributed crack cocaine in 2022.  As a result of today's decision, recidivating violent felons like Cervenak will be back on Ohio's streets sooner rather than later.  The consequences are as predictable as they are tragic.

The majority claims that the categorical approach is responsible for today's outcome.  In fairness to the majority, the categorical approach often forces us to reach conclusions that defy common sense.  But not here.  Responsibility lies at the feet of this court.

It didn't have to be this way.  The majority passed over three defensible answers before reaching an indefensible one.  First, the majority could have held that Cervenak's robbery conviction was a categorical match for generic robbery under the Sentencing Guidelines.  Second, the majority could have recognized that Cervenak's robbery conviction was a categorical match for extortion as defined in the Guidelines.  And third, at the very least, the majority could have followed the Supreme Court's instructions and other circuits' examples by

---

[1] *See State v. Thomas*, No. 113641, 2024 WL 4849195, at *1 (Ohio Ct. App. Nov. 21, 2024); *State v. Powell*, No. 2024-CA-8, 2024 WL 4579275, at *1 (Ohio Ct. App. Oct. 25, 2024); *State v. Flitcraft*, No. 2023-L-113, 2024 WL 3880076, at *5 (Ohio Ct. App. Aug. 19, 2024).

[2] *See* U.S. Sent'g Comm'n, Recidivism Among Federal Violent Offenders 3 (Jan. 2019), available at https://perma.cc/SF87-CYB9.

seeking clarity from the Ohio Supreme Court on Ohio law before reaching a result that opens Ohio robbery indictments to serious constitutional concerns. It chose none of the above. I respectfully dissent.

## I. Background & Summary

How did we get here? Start with the facts. Cervenak pled guilty to dealing drugs and possessing a firearm. At sentencing, the district court noted that Cervenak had previous convictions for trafficking heroin and for robbing two people at gunpoint. Those prior convictions are crucial: the federal Sentencing Guidelines recommend a longer sentence when "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." *See* U.S.S.G. §§ 4B1.1, 4B1.2. Nobody disputes that Cervenak's heroin trafficking could serve as a predicate offense for an enhancement. The district court concluded that Cervenak's robbery also qualified because it was a "crime of violence." Accordingly, it gave him a sentencing enhancement.

Cervenak argues that his previous Ohio robbery conviction isn't a "crime of violence." Thus, he says, he shouldn't have received the enhancement.

To assess whether Ohio robbery is a crime of violence, courts employ the "categorical approach." In doing so, courts compare the elements of Ohio robbery with the elements of the crimes that the Guidelines specify as violent. If the elements of Ohio robbery are "the same as, or narrower than" the elements of one of the Guidelines crimes, then Ohio robbery is a "crime of violence" under the Sentencing Guidelines. *See Descamps v. United States*, 570 U.S. 254, 257 (2013).

To run that comparison, the court first uses *Shepard* documents to determine the elements of the version of Ohio robbery that Cervenak committed. Second, it pinpoints the relevant "crime[s] of violence" listed in the Guidelines: robbery and extortion. Finally, it compares Ohio robbery with both Guidelines robbery and extortion.

Based on his *Shepard* documents—specifically, his indictment—Cervenak was convicted of Ohio robbery under § 2911.02(A)(2). That provision prohibits "[i]nflict[ing], attempt[ing] to

inflict, or threaten[ing] to inflict physical harm on another" while "attempting or committing a theft offense or in fleeing immediately after the attempt or offense." Ohio Rev. Code Ann. § 2911.02(A)(2). Ohio defines a "theft offense," in turn, to be any of thirty-one offenses listed in § 2913.01(K)(1). But Cervenak's indictment didn't specify which "theft offense" he committed.

So, before comparing Cervenak's robbery offense to crimes of violence in the Guidelines, there's a critical threshold question: Is each of those thirty-one offenses a distinct "element" of the crime of Ohio robbery, or is each merely a different "means" of committing the single theft offense element of Ohio robbery?

The best reading of Ohio law—and the reading that insulates Ohio's robbery indictment practices from serious constitutional issues—is that the different offenses are means, not elements. If so, then Ohio robbery is a categorical match for generic robbery because Ohio robbery substantially corresponds to both the common law and a mass of other states' laws. That closes this case.

But adopting the majority's assumption that each particular theft offense is itself an element—such that there are at least thirty-one different criminal offenses that all go by the name of "robbery" in Ohio—then there's a constitutional conundrum. Constitutional grand jury and fair notice requirements mandate that indictments list all the elements of the crime. But Ohio routinely doesn't specify the individual theft offense on which the robbery charge is predicated. If an individual theft offense is an element, the majority's approach would mean that Ohio is violating the state and federal constitutions when it fails to specify the theft offense in its robbery indictments. To avoid that constitutional concern, precedent leaves two reasonable choices.

Under option one, turning to state courts' interpretations of state law and practice demonstrates that Ohio courts presume that an unspecified "theft offense" is ordinary theft. This makes Ohio robbery a clean match with Guidelines extortion. And it avoids any constitutional concerns.

As for option two, before figuring that Ohio's criminal procedure is on a collision course with the Ohio and federal constitutions, precedent commands that we ask the Ohio Supreme Court for clarification on Ohio law. That is, the court should have certified whether the

individual theft offenses are means or elements.  The court also should have certified the question of whether a robbery indictment resting on an unspecified theft offense means ordinary theft (and thus gives the defendant the constitutional notice that he's due).

Neither of these options involves declaring that robbing two people at gunpoint isn't a violent crime.  Yet that's what the majority has done.

## II.  Robbery

When Cervenak was sentenced for his federal offense, the Sentencing Guidelines did not define robbery.  *See* U.S.S.G. § 4B1.2(a) (2021).  Thus, a court must "compare the elements" of Ohio robbery "with the elements of the 'generic' crime—[that is,] the offense as commonly understood."  *Descamps*, 570 U.S. at 257.  Here, that would involve comparing Ohio robbery under § 2911.02(A) with generic robbery.

But running that comparison first requires knowing the elements of Ohio robbery.  And that, in turn, requires knowing whether the individual theft offenses are themselves elements or are mere means of committing the single "theft offense" element.  They are means.

### A.  Ohio Robbery's Different Means of Committing the "Theft Offense" Element

Elements "are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction."  *Mathis v. United States*, 579 U.S. 500, 504 (2016) (citations omitted).  Means are "various factual ways" of committing a single element.  *Id.* at 506.

To be sound under the federal and Ohio constitutions, the indictment must list all the elements of the crime.  *Russell v. United States*, 369 U.S. 749, 765 (1962); *State v. Troisi*, 206 N.E.3d 695, 703–04 (Ohio 2022).  But it doesn't have to list the means.  And if the defendant goes to trial, the jury must unanimously agree that each element of the alleged crime has been satisfied.  *Mathis*, 579 U.S. at 504; Ohio Crim. R. 31(A).  But the jurors don't have to all agree on the means a defendant used.

Consider an example.  A statute prohibits the use of a "deadly weapon," and then lists various weapons that are "deadly"—such as a "knife," a "gun," and so on.  *See Mathis*, 579 U.S.

at 504. The use of a deadly weapon is an element; the specific weapons are different means of satisfying that element. *Id.* The indictment would need to state that the defendant used a deadly weapon. But it would not need to specify whether he used a knife, gun, or the like. To convict the defendant, the jury would have to find he used a deadly weapon. But the jurors would not need to agree on which deadly weapon he used.

Here, the text of Ohio's robbery statute; state court caselaw; constitutional avoidance; and our categorical approach precedent show that the individual theft offenses are means of committing Ohio robbery's theft offense element.

Start with the plain text. The statute criminalizes "attempting or committing a theft offense." Ohio Rev. Code Ann. § 2911.02(A). It never specifies which "theft offense" the defendant must commit. Instead, the statute points to a different provision, which in turn lists several qualifying theft offenses—just like the knife, gun, and other deadly weapons listed in the hypothetical statute above. *See id.* § 2911.02(C)(2) (defining "theft offense" with reference to § 2913.01). Thus, a defendant could be convicted of robbery by means of any theft offense listed in § 2913.01(K)(1). All that matters for a conviction is that the defendant "[i]nflict, attempt to inflict, or threaten to inflict physical harm on another" while committing any "theft offense." *Id.* § 2911.02(A)(2).

Ohio courts confirm what the text reveals. Ohio courts routinely refer to "*the* 'theft offense' element of the robbery statute," rather than referring to the multiple predicate theft offenses. *See State v. Tolliver*, 19 N.E.3d 870, 874 (Ohio 2014) (emphasis added). And they have done the same for aggravated robbery, which mirrors Ohio robbery's reliance on a predicate "theft offense." *See State v. Horner*, 935 N.E.2d 26, 35 (Ohio 2010) (noting that aggravated robbery "includes as *an* element an underlying theft offense" (emphasis added)). Thus, these cases suggest that the underlying theft offense isn't a set of alternative elements; rather, the theft offense is a single element of Ohio robbery. The individual theft offenses are alternative means of satisfying that single element.

What's more, when an Ohio crime rests on a predicate offense, the Ohio Supreme Court has held that "an indictment's reference to the statute number of a predicate offense provides

sufficient notice to a defendant." *Troisi*, 206 N.E.3d at 704 (citing *State v. Buehner*, 853 N.E.2d 1162, 1164 (Ohio 2006)). Thus, the indictment "need not also include each element of the predicate offense." *Buehner*, 853 N.E.2d at 1164. In *Buehner*, the defendant was charged with the offense of "ethnic intimidation," which requires the commission of one of various predicate offenses. *Id.* The defendant's indictment "specifically identified" one of those predicate offenses by its "statute number." *Id.* Thus, the Ohio Supreme Court found that the indictment was adequate. *Id.*

*Buehner* teaches that if the § 2913.01(K)(1) theft offenses were "elements" of robbery, the robbery indictment would need to list the "statute number" of the specific predicate theft offense that the defendant is accused of committing. Here, for example, that would include listing "§ 2913.02" for ordinary theft. But the robbery counts in Cervenak's indictment—like many such Ohio robbery indictments—don't mention any predicate by name or by statute number. Rather, Cervenak's indictment just accuses him of "attempting or committing a theft offense." R. 32-1, Pg. ID 141–42. The fact that the indictment doesn't specify the theft offense by name or by number indicates that the specific theft offense isn't an element. So, to convict a defendant of Ohio robbery, the jury must find that he committed *a* theft offense—it can be any of the thirty-one listed in § 2913.01(K)(1).

Constitutional avoidance also supports reading the individual theft offenses as alternative means of committing the single "theft offense" element. The federal and Ohio constitutions mandate that indictments give fair notice by listing the elements of the crime. *Russell*, 369 U.S. at 765 (relying on due process and the Sixth Amendment's notice clause, among other provisions); *Troisi*, 206 N.E.3d at 703 (interpreting the Ohio constitution as requiring indictment to "contain[] the elements of the offense charged" (citation omitted)).

But Ohio robbery indictments often don't charge the predicate theft offense. Instead, they state that the defendant was "attempting or committing a theft offense"—just as Cervenak's indictment did. R. 32-1, Pg. ID 141–42. That's a constitutional problem unless the individual theft offenses are mere means of committing a single theft offense element.

So, the "means" reading squares with our duty to avoid concluding that states are violating the Constitution—as well as their own constitutions. As Justice Story wrote when confronted with a state constitutional challenge to a state law while riding circuit: If "there is a construction [of the state law], which although not favored by the exact letter . . . give[s] it a constitutional character," then "this construction ought to be adopted." *Soc'y for the Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767, 769 (Story, Circuit Justice, C.C.D.N.H. 1814) (No. 13,156).

Justice Story's admonition flowed from earlier Supreme Court opinions. In *Cooper v. Telfair*, 4 U.S. (4 Dall.) 14 (1800), a diversity suit raised the question whether a Georgia statute violated the Georgia Constitution. *See* David P. Currie, *The Constitution in the Supreme Court: The First Hundred Years, 1789–1888*, at 51 (1992). The Court found no state constitutional violation. Justice Washington explained that the state law's unconstitutionality would need to be "clearly demonstrated" before he would conclude that "the law [was] void." *Cooper*, 4 U.S. at 18 (Washington, J.). Similarly, Justice Paterson wrote that there must be a "clear and unequivocal breach of the [Georgia] constitution" to warrant pronouncing the Georgia "law void." *Id.* at 19 (Paterson, J.). If founding-era Supreme Court Justices hesitated before finding a conflict between a state's law and its constitution, we should not manufacture such a conflict here.

A final argument for concluding that the individual theft offenses are means of committing the theft offense element sounds in uncertainty: If there's doubt about the elements-versus-means question, then "the statute is indivisible." *United States v. Stitt*, 860 F.3d 854, 862 (6th Cir. 2017) (en banc), *rev'd on other grounds*, 586 U.S. 27 (2018). In other words, the theft offenses are various means of committing the same "indivisible" crime, rather than separate "divisible" elements.[3]

---

[3]The majority, for its part, points to *State v. Tolliver* in support of the proposition that Ohio robbery requires proof of "the elements" of the underlying theft offense. Maj. Op. at 7 (quoting *Tolliver*, 19 N.E.3d at 874). If the majority's reading of *Tolliver* is correct, that places *Tolliver* in conflict with the Ohio Supreme Court's reasoning in *State v. Horner*. *See* 935 N.E.2d at 35 (stating that "*an* underlying theft offense" is "*an* element" of Ohio robbery (emphases added)). It also places *Tolliver* in tension with itself: *Tolliver* elsewhere refers to "*the* 'theft offense' element of the robbery statute." 19 N.E.3d at 874 (emphasis added). So, if the majority is right about *Tolliver*, then the Ohio caselaw is at least muddled on this question—which is yet another reason to either certify the

**B. Comparing Ohio Robbery & Generic Robbery**

The individual theft offenses are not themselves elements of Ohio robbery. Thus, the next step is to compare the elements of Ohio robbery with the elements of generic robbery. *See Descamps*, 570 U.S. at 257.

Start with the elements of Ohio robbery. Recall that Cervenak was convicted under § 2911.02(A)(2), which prohibits "[i]nflict[ing], attempt[ing] to inflict, or threaten[ing] to inflict physical harm on another" while "attempting or committing a theft offense or in fleeing immediately after the attempt or offense." Ohio Rev. Code Ann. § 2911.02(A)(2). So, Ohio robbery consists of two sets of elements. First, there's a force element. That's the inflicting, attempting to inflict, or threatening to inflict physical harm. And second, there's the theft element. That's the § 2913.01(K)(1) "theft offense."

Generic robbery has those same two elements: force and theft. To determine generic robbery's elements, courts must first look to the common law and then at other states' contemporary practice. *See Stokeling v. United States*, 586 U.S. 73, 79 (2019); *Taylor v. United States*, 495 U.S. 575, 598–99 (1990). Both the common law and other states' contemporary practice indicate that Ohio robbery is a match for generic robbery.

### 1. Force

Ohio robbery "substantially corresponds" to generic robbery as defined by the common law and other states' laws. *Taylor*, 495 U.S. at 602. First, both Ohio robbery and generic robbery require an actual or threatened infliction of injury. Second, both Ohio robbery and generic robbery also entail some sort of theft or theft-related offense.

#### i. Ohio Robbery's Force Element

Ohio robbery requires "[i]nflict[ing], attempt[ing] to inflict, or threaten[ing] to inflict physical harm on another." Ohio Rev. Code Ann. § 2911.02(A)(2). These requirements match

---

elements-versus-means question, *see infra*, Part IV, or conclude that the distinct theft offenses are means, *see Stitt*, 860 F.3d at 862.

the requirement of common law robbery that property be taken through either "force or putting [the victim] in fear." 3 Wayne R. LaFave, *Substantive Criminal Law* § 20.3 (3d ed. 2017).

And Ohio robbery's mens rea requirement isn't to the contrary. Despite what prior panels have said, *see, e.g.*, *United States v. Butts*, 40 F.4th 766, 770–71 (6th Cir. 2022), Ohio robbery requires that its force element be committed at least recklessly. That's been true since March 2015, the effective date of a bill that abrogated a 2014 Ohio Supreme Court ruling to the contrary. Unfortunately, our court has failed to recognize this critical change in Ohio law.

In the 2014 case of *State v. Tolliver*, the Ohio Supreme Court held that "the state need not prove a culpable mental state with respect to the force element" of Ohio robbery. 19 N.E.3d at 875. And *Tolliver* made clear that its holding applied to § 2911.02(A)(2), the type of robbery for which Cervenak was convicted. *See Butts*, 40 F.4th at 771 ("Although *Tolliver* analyzed convictions under § (A)(3) rather than § (A)(2) of § 2911.02, it made clear that its reasoning applies equally to all of § 2911.02's subdivisions." (citing *Tolliver*, 19 N.E.3d at 874–75)).

Our court has relied on *Tolliver* to conclude that a defendant can commit robbery's force element with a mental state less culpable than recklessness. *See, e.g.*, *id.* at 770–71.

But the Ohio legislature abrogated *Tolliver* just months after the state high court handed it down. As a leading treatise on Ohio criminal law explains, the new law "put to rest" Ohio courts' "struggles," like in *Tolliver*, to determine an element's mens rea when the statute didn't specify one. 2 Lewis R. Katz et al., Baldwin's Ohio Practice, Criminal Law § 85:10, at 187 (3d ed. Supp. 2024). Therefore, *State v. Tolliver* "should be considered abrogated by the statutory amendment." *Id.*

How did the legislature abrogate *Tolliver*? *Tolliver* had reasoned that under then-existing Ohio law, if a *section* of the Revised Code (like robbery) "already require[d] proof of a culpable mental state" for *one* element of the offense, then "the state need prove" culpability only for *that* element. 19 N.E.3d at 875. So, because the robbery section of the Code already required proof of a culpable mental state for the predicate theft offense, the prosecution only had to prove a culpable mental state as to that theft offense element. *Id.* Therefore, the prosecution didn't have to prove a culpable mental state as to robbery's force element. *Id.*

In response to *Tolliver*, the Ohio legislature amended state law as follows: "When language defining an element of an offense that is related to knowledge or intent or to which mens rea could fairly be applied neither specifies culpability nor plainly indicates a purpose to impose strict liability, the element of the offense is established only if a person acts recklessly." Ohio Rev. Code Ann. § 2901.21(C)(1). "The amendment made clear that mens rea is to be applied on an element-by-element basis." 2 Katz et al., *supra*, § 85:10, at 188. In other words, the legislature abrogated *Tolliver*'s focus on the *section*: the revised law "applies to the *elements* of an offense, rather than the entire *section* defining an offense." *State v. Cunningham*, No. 21AP-470, 2024 WL 2723445, at *15 (Ohio Ct. App. May 28, 2024) (emphasis added); *see also State v. Ewing*, No. 29685, 2021 WL 2694173, at *7 (Ohio Ct. App. June 30, 2021) (observing that § 2901.21(C)(1) "now omits any reference to the 'section' that defines an offense"). After that amendment, the fact that the theft offense element requires a culpable mental state doesn't mean that the force element lacks such a requirement. Rather, at the very least, the force element requires a "reckless" mental state.

That's a critical change in Ohio law. The force element of Ohio robbery is an element "to which mens rea could fairly be applied," doesn't "specif[y] culpability," and doesn't "plainly indicate[] a purpose to impose strict liability." *Cunningham*, 2024 WL 2723445, at *15 (quoting § 2901.21(C)(1)). Therefore, the force element "is established only if a person acts recklessly." Ohio Rev. Code Ann. § 2901.21(C)(1). It no longer matters that the Ohio robbery statute specifies a mental state for the theft offense element but not the use-of-force element. Section 2901.21(C)(1) fills the gap.

Ohio courts of appeals have recognized this crucial statutory change. *See Cunningham*, 2024 WL 2723445, at *15. Therefore, in *Cunningham*, the jury instructions correctly specified that the defendant "had to commit the physical harm element of robbery with the mental state of recklessness." *Id.*; *see also State v. Morris*, No. C–150421, 2016 WL 4452993, at *3 (Ohio Ct. App. Aug. 24, 2016) (recognizing the same effect of § 2901.21(C)(1) on aggravated robbery).[4]

---

[4]To be sure, other Ohio courts of appeals have failed to notice the Ohio legislature's abrogation of *Tolliver*. *See, e.g.*, *State v. Smith*, No. 27560, 2018 WL 3414237, at *2 (Ohio Ct. App. July 13, 2018). But we should follow the lead of the courts of appeals like *Cunningham* that noticed the critical change in Ohio law. And to the extent

### ii. Generic Robbery's Force Element

Ohio robbery requires a mens rea of at least recklessness for the force element, which makes it an easy match with generic robbery. *Cf. United States v. Adair*, 16 F.4th 469, 470 (5th Cir. 2021); *United States v. Flores-Mejia*, 687 F.3d 1213, 1216 (9th Cir. 2012); *United States v. Martin*, 15 F.4th 878, 883–85 (8th Cir. 2021). How so?

The Supreme Court has repeatedly told courts to look at two sources to define a generic offense. First, the common law. *Stokeling*, 586 U.S. at 79; *cf. Neder v. United States*, 527 U.S. 1, 21–22 (1999). Second, other states' definitions of the crime. Why look there? Because by omitting a definition of robbery, the Sentencing Commission "did not wish to specify an exact formulation that an offense must meet in order to count" for an enhancement. *Taylor*, 495 U.S. at 599. Rather, the Commission designated certain predicate offenses by using "uniform, categorical definitions to capture all offenses of a certain level of seriousness." *Id.* at 590. So, when applying the categorical approach, the Court has "repeatedly declined to construe" a federal criminal statute "in a way that would render it inapplicable in many States." *Stokeling*, 586 U.S. at 81; *see also United States v. Castleman*, 572 U.S. 157, 167 (2014) (reading "physical force" to include common-law force, in part because a different reading would render federal law "ineffectual in at least 10 States"). The same holds true for the Sentencing Guidelines.

Thus, the common law and other states' robbery statutes provide a definition of generic robbery. *See United States v. Brown*, 957 F.3d 679, 685 (6th Cir. 2020) (doing the same for generic burglary). The common law didn't require a mens rea with respect to robbery's force element. And, like Ohio, many states require only a mens rea of recklessness for the force element.

### a. Common Law

A defendant committed common law robbery by force when he applied enough force to overcome the victim's resistance. His intent didn't matter.

---

there is any doubt, we should certify to the Ohio Supreme Court the question whether the force element of Ohio robbery must be committed with a mens rea of at least recklessness, consistent with the 2015 statutory change. *See, e.g.*, *Somers v. United States*, 15 F.4th 1049, 1054–56 (11th Cir. 2021) (certifying state law questions to state supreme court in light of a "split" in state lower courts), *certifying questions to* 355 So. 3d 887 (Fla. 2022).

At common law, "[t]he intent of the perpetrator of violence was not a factor in determining whether the offense of robbery ha[d] been committed." *United States v. Morris*, No. CR 20-438, 2022 WL 4389516, at \*6 (E.D. Pa. Sept. 21, 2022), *aff'd*, No. 22-2781, 2023 WL 7099269 (3d Cir. Oct. 27, 2023). For example, Blackstone observed that "open and violent assault" distinguished robbery from simple theft. 4 William Blackstone, Commentaries on the Laws of England 241 (1769). But the amount of force needed for this violence was not required to be of "any great degree." *Id.* at 242. All the law required was that the force "oblige[d] a man to part with his property." *Id.* It didn't require a mens rea.

A later treatise describes the force element similarly: "if any injury be done to the person . . . there will be a sufficient actual 'violence'" to establish robbery. 1 William Oldnall Russell & Charles Sprengel Greaves, Crimes and Misdemeanors 875 (8th ed. 1857). This treatise lists some contemporary examples, none of which required intentional use of force. They include snatching an earring from a lady's ear such that "blood [was] drawn"; twisting a diamond pin from a lady's hair such that "part of the hair [was] torn away"; or snatching a watch from a steel chain and "overcom[ing] the resistance made by the steel chain." *Id.* at 875–76. One could do so negligently.

Other treatises shared this conception of the force element. *See, e.g.*, Wm. L. Clark & Wm. L. Marshall, 2 Law of Crimes 861–62 (1900) ("If there is any injury to the person of the owner, or if he resists the attempt to rob him, and his resistance is overcome, there is sufficient violence to make the taking robbery, however slight the resistance."). Force at common law only required overcoming the resistance of a victim. It didn't require any intent or purpose.

The Supreme Court shares this reading of common law. In *Stokeling*, the Court explained that "[i]f an act physically overcame a victim's resistance, however slight that resistance might be, it necessarily constituted violence." 586 U.S. at 78 (quotation omitted).

Many state supreme courts have read the common law in the same way. Consider West Virginia. There, robbery "derive[s] from the common law." *State v. Wilkerson*, 738 S.E.2d 32, 37 (W. Va. 2013) (citation omitted). Accordingly, the state supreme court has explained: "The intent to injure . . . is not an element of robbery." *Id.* at 38. Similarly, the New Jersey Supreme

Court has observed that common law robbery cases "uniformly required the presence of violence or threat but did not address the mental state that must accompany that conduct. Thus, the common law did not place separate or discrete significance on the culpability associated with the assaultive aspect of robbery." *State v. Sewell*, 603 A.2d 21, 25 (N.J. 1992). All told, common law robbery didn't require intent for the force element.

The common law is consistent with Ohio practice, both under the old *Tolliver* regime and after § 2901.21(C)(1) supplied a minimum mens rea of recklessness. Remember the common law examples of snatched earrings, torn pins, and stolen watches? These examples look a lot like Ohio robbery committed with reckless force.

Take *State v. Pellegrini*, No. 1-12-30, 2013 WL 221506 (Ohio Ct. App. Jan. 22, 2013). There, the defendant grabbed a moneybag from the victim's hand. *Id.* at *1. In doing so, the defendant caused the moneybag to catch on a ring on the victim's finger, which in turn caused her finger to swell. *Id.* The Ohio Court of Appeals upheld the conviction, finding that the defendant "recklessly caused the victim physical harm." *Id.* at *8. This incident mirrors those described in the common law treatises: The defendant may not have intended to use force, but he recklessly (or without any culpable mens rea with respect to his use of force, for that matter) caused an injury when trying to take the property away from the victim. Just like how grabbing the pin (which in turn caught the victim's hair) constituted incidental force sufficient for robbery, so too does grabbing the moneybag (which in turn caught the ring) constitute incidental force sufficient for robbery. The upshot, then, is that Ohio robbery, with its minimum mens rea of recklessness, clears the minimum culpability required at common law.

### b. Other States

Ohio's use of recklessness as a baseline mens rea also matches up with at least twenty-one other states' robbery statutes. That's critical because the Supreme Court has declined to define a generic crime in a way that would exclude statutes "in at least 10 States." *Castleman*, 572 U.S. at 167. So, if our court were to conclude that Ohio robbery isn't a match with generic robbery because it can be committed recklessly, we'd be concluding that the robbery statutes of at least twenty-two states fall outside the generic definition. This court can't do that. *See id.*

To start, three states explicitly allow robbery to be committed by reckless use of force.[5]

Six more states, including Ohio, don't specify a mens rea for the force element of their robbery statute. But elsewhere in their criminal codes, they provide that if an offense fails to specify a mens rea, then the requisite mens rea is at least recklessness (or, in one state, negligence).[6] And some of these states' courts have recognized that robbery's force element thus takes on a minimum mens rea of recklessness. *See, e.g.*, *McElyea v. State*, 189 S.W.3d 67, 70 (Ark. Ct. App. 2004) (holding that "[f]or purposes of the robbery statute, it is immaterial whether appellant ever intended to use physical force"), *aff'd*, 200 S.W.3d 881 (Ark. 2005); *People v. Jones*, 595 N.E.2d 1071, 1075 (Ill. 1992) (holding that intent, knowledge, or recklessness can serve as the mental state for robbery). So too with their jury instructions. *See, e.g.*, Ill. Pattern Jury Instrs.-Criminal 14.01 (providing that a person can "recklessly" commit the offense of robbery). And in at least one of these states, Pennsylvania, a state court has suggested that strict liability suffices. *See Commonwealth v. Payne*, 868 A.2d 1257, 1263 (Pa. Super. 2005) (holding that robbery, unlike aggravated assault, "simply does not require [a specific] mental state when the 'serious bodily injury' is inflicted"). Meanwhile, federal courts have reasoned that recklessness would suffice in Pennsylvania. *See, e.g.*, *United States v. Parrott*, 585 F. Supp. 3d 661, 667 (E.D. Pa. 2022); *United States v. Giles*, No. CR 94-20-01, 2021 WL 5418158, at *4 (E.D. Pa. Nov. 19, 2021). So far, that's nine states, including Ohio, that define robbery to include a reckless use of force.

But that's not all. Two states impose a strict liability mens rea on robbery's force element. California, for one, has no mens rea when it comes to use of force against the victim.

---

[5]*See* Haw. Rev. Stat. Ann. § 708-841(1)(c) (robbery includes "recklessly inflict[ing] serious bodily injury upon another"); Me. Rev. Stat. Ann. tit. 17-A, § 651(1)(A) (robbery includes "recklessly inflict[ing] bodily injury on another"); Tex. Penal Code Ann. § 29.02(a)(1) (robbery includes "intentionally, knowingly, or recklessly caus[ing] bodily injury to another").

[6] *See* Ark. Code Ann. § 5-12-102 (defining robbery); *id.* § 5-2-203(b) (applying at least recklessness absent a prescribed mens rea); 720 Ill. Comp. Stat. Ann. 5/18-1 (defining robbery); *id.* 5/4-3(b) (requiring that a defendant act with "any mental state defined in Sections 4-4, 4-5 or 4-6," the least culpable of which is recklessness); N.D. Cent. Code Ann. § 12.1-22-01(1) (defining robbery); *id.* § 12.1-02-02(1)(e), (2) (applying at least recklessness absent a prescribed mens rea); 18 Pa. Stat. and Cons. Stat. Ann. § 3701 (defining robbery); *id.* § 302(c) (applying at least recklessness absent a prescribed mens rea); Mont. Code Ann. § 45-5-401 (defining robbery); *id.* cmt. (noting that Montana robbery "parallels that of" the Model Penal Code, which can rest on a mens rea of recklessness, *see infra*); *id.* § 45-2-103(1) (applying at least negligence absent a prescribed mens rea).

*People v. Anderson*, 252 P.3d 968, 972 (Cal. 2011) (upholding a robbery conviction even though the defendant "did not intend to strike" the victim "but did so accidentally"); *see also United States v. Martinez-Hernandez*, 932 F.3d 1198, 1203 (9th Cir. 2019) (noting that California robbery may be committed with an accidental use of force). Kansas uses this scheme, too. *See State v. Moulin*, 450 P.3d 846 (Kan. Ct. App. 2019) (table) (explaining that robbery's "force element does not require a culpable mental state"). That's eleven states.

Further, at least three other states define the force required for robbery by the injury caused, not the perpetrator's mens rea.[7] Thus, these robbery statutes "include[] no element of *intent* to inflict bodily injury." *State v. Lewis*, 233 P.3d 891, 896 (Wash. Ct. App. 2010), *as amended* (June 2, 2010) (emphasis in original). Some courts in these states accordingly suggest that a person could commit robbery "by forcibly stealing property and injuring a person in the course thereof recklessly or with criminal negligence." *State v. Wright*, 608 S.W.3d 790, 796 (Mo. Ct. App. 2020). This makes sense: When one part of the statute requires a specific intent to take the property of another but is silent on the force element, "[t]he statute thus does not explicitly impose a requirement that the force or violence have been intentionally deployed." *Gray v. United States*, 155 A.3d 377, 395 (D.C. 2017) (McLeese, J., concurring in the judgment in part and dissenting in part). The tally is up to fourteen states, then, where robbery can be committed by reckless force.

And, as discussed earlier, West Virginia robbery is a common law crime. *Wilkerson*, 738 S.E.2d at 37. So, that state's highest court has made clear that "[t]he intent to injure . . . is not an element of robbery." *Id.* at 38. That's fifteen states.

West Virginia is not alone. Robbery in North Carolina, South Carolina, Rhode Island, and Virginia also flows from the common law. *See State v. Herring*, 370 S.E.2d 363, 368 (N.C. 1988); S.C. Code Ann. § 16-11-325; *State v. Day*, 925 A.2d 962, 977–78 (R.I. 2007); *Commonwealth v. Jones*, 591 S.E.2d 68, 70 (Va. 2004).[8] As explained above, the common law

---

[7]*See, e.g.*, Mo. Ann. Stat. § 570.025(1) (the defendant must "cause[] physical injury"); Wash. Rev. Code Ann. § 9A.56.200(1)(a)(iii) (the defendant must "[i]nflict[] bodily injury"); Wyo. Stat. Ann. § 6-2-401(a)(1) (same).

[8]To be sure, certain federal courts have reasoned that some of these common law robbery statutes don't entail a realistic probability of conviction for a reckless use of force. Why? Because there's no evidence of state

didn't impose a culpable mens rea requirement on robbery's force element. So, absent any indication from these states' supreme courts, there's no evidence that they have departed from the common law. Indeed, the evidence shows that they have stayed true to the common law requirement that only a minimal quantum of force be used when committing robbery to satisfy the force element. *See, e.g.*, *State v. Sawyer*, 29 S.E.2d 34, 37 (N.C. 1944) ("Although actual force implies personal violence, the degree of force used is immaterial, so long as it is sufficient to compel the victim to part with his property. . . ."); *see also United States v. Gardner*, 823 F.3d 793, 803–04 (4th Cir. 2016) (collecting more recent examples of North Carolina caselaw), *abrogated on other grounds as recognized in United States v. White*, 987 F.3d 340, 343 (4th Cir. 2021).

That adds up to nineteen states.

Finally, there are three more. Maryland robbery can be committed with reckless force. That state's caselaw characterizes robbery as "larceny from the person accomplished by either an assault (putting in fear) or a battery (violence)." *Snowden v. State*, 583 A.2d 1056, 1059 (Md. 1991). And battery in Maryland can be committed recklessly or with criminal negligence. *See Duckworth v. State*, 594 A.2d 109, 112–13 (Md. 1991). It need not be intentional. *Elias v. State*, 661 A.2d 702, 709 (Md. 1995). Thus, Maryland robbery can be committed through a reckless, unintentional battery. The same goes for Delaware. The Delaware Supreme Court has explained: "Although physical injury may be an element of first degree robbery in some cases, it need not be caused intentionally or recklessly. . . ." *Hackett v. State*, 569 A.2d 79, 80 (Del. 1990); *accord Fedorkowicz v. State*, 988 A.2d 937 (Del. 2010) (table). And based on the text of its robbery statute, Florida is also worthy of inclusion. The statute specifies a mens rea for the theft element, but not the force element. *See* Fla. Stat. Ann. § 812.13(1) (requiring only that

---

court convictions to that effect. *See, e.g.*, *United States v. Doctor*, 842 F.3d 306, 311 (4th Cir. 2016). But this case doesn't require determining whether robbery in these states is a categorical match with a federal statute or Guideline. Instead, it requires looking at these laws to get a sense of the universe of state robbery laws to reach a generic definition of robbery—much like the Supreme Court in *Castleman* with respect to assault or battery. In *Castleman*, the Court relied on the Government's listing of the relevant state laws, the majority of which included only citations to state statutes and didn't mention state caselaw. *Castleman*, 572 U.S. at 167–68 (citing App. B to Brief for United States 10a–16a). Similarly, in his concurrence, Justice Scalia cited the state statutes alone, without any reference to state court caselaw. *Id.* at 178 n.5 (Scalia, J., concurring in part and concurring in the judgment). After all, the goal here is to get a general idea of what "robbery" is so as not to rule out a large batch of states.

"when in the course of the taking there is the use of force, violence, assault, or putting in fear"). That's twenty-two total states.

In addition, the Model Penal Code ties robbery's force element to a reckless mens rea. *Cf. Taylor*, 495 U.S. at 598 & n.8 (noting how the MPC squares with other state statutes in defining a generic crime). The MPC doesn't specify the mens rea for the use of force during a robbery. *See* Model Penal Code § 222.1. So, knowledge or recklessness suffices. *See id.* § 2.02(3).

All told, at least twenty-two states, plus the MPC, say a defendant can commit robbery by a reckless use of force. Again, that's critical because the Supreme Court has declined to define generic crime in a way that would exclude the relevant statutes "in at least 10 States." *Castleman*, 572 U.S. at 167; *see also Stokeling*, 586 U.S. at 81 (declining to construe a federal criminal statute "in a way that would render it inapplicable in many States"). Following the Supreme Court, generic robbery includes a reckless use of force.[9]

\* \* \*

In sum, Ohio's robbery statute is by no means "idiosyncratic" in defining force with a mens rea of at least recklessness. *Brown*, 957 F.3d at 686. For one, the common law didn't require intent for robbery's force element. And Ohio robbery is in the good company of at least twenty-one other states.[10]

---

[9]Ohio robbery under § 2911.02(A)(2) can also involve "threaten[ing] to inflict physical harm on another." This version of Ohio robbery is consistent with the common law and other states' practices. Blackstone explained that the necessary violence for robbery required "so much force, or threatening by word or gesture, be used, as might create an apprehension of danger." 4 Blackstone, *supra*, at 242. Just like robbery by force, robbery by "threatening" did not come with an attached mens rea requirement. *See Sewell*, 603 A.2d at 25 (explaining that common law robbery "cases uniformly required the presence of violence *or threat* but did not address the mental state that must accompany that conduct. Thus, the common law did not place separate or discrete significance on the culpability associated with the assaultive aspect of robbery." (emphasis added)). And the robbery codes across states today include threats to inflict bodily injury without specifying a mens rea. *See, e.g.*, 720 Ill. Comp. Stat. Ann. 5/18-1(a) (robbery includes "threatening"); Cal. Penal Code § 211 (robbery can be accomplished by "force or fear"); *see also* Model Penal Code § 222.1(b) (robbery includes "threaten[ing] another with . . . bodily injury").

[10]Of course, this does not mean that a state robbery statute that lacks a mens rea for the force element can't be a categorical match for generic robbery. After all, common law robbery had no mens rea requirement for the force element. And robbery is the "quintessential" crime of violence. *Stokeling*, 586 U.S. at 80. But because the minimum mens rea for Ohio robbery's force element is recklessness, that's not at issue here.

## 2. Theft Element

Ohio robbery is also a categorical match for generic robbery with respect to the theft offense element. Ohio robbery's theft offense element is not an outlier compared to that of other states.

Here, recall that the underlying "theft offenses" represent different means of committing Ohio robbery's "theft offense" element. Given the categorical approach's "indifference to how a defendant actually committed a prior offense," a court "may ask only whether the *elements* of the state crime and generic offense" provide a match. *Mathis*, 579 U.S. at 517 (emphasis in original). So, a court must compare the "theft offense" element of Ohio's robbery statute to the theft element of generic robbery to see if they align.

Compared to other states, Ohio's "theft offense" need only have the same "basic" substance as its state counterparts to fit within the generic definition, "regardless of its exact definition or label." *Taylor*, 495 U.S. at 599. In order words, Ohio's conception of a "theft offense" need not be a dead ringer for other states' laws; it need only "substantially correspond[]" to them. *Quarles v. United States*, 587 U.S. 645, 650 (2019) (quoting *Taylor*, 495 U.S. at 602).

It does. Ohio is not alone in defining the theft offense element of robbery to include a broad range of means. Just like the text of the Ohio statute that lists the thirty-one "theft offenses," many other states—seventeen at least—define "theft" more broadly by way of an umbrella term.[11] And just like Ohio, many of these states seem to understand their umbrella theft offense to involve various *means* of committing a theft. They don't treat the facts that give rise to the theft offenses as elements that must be proven to the jury. This is because their robbery indictments often don't specify an underlying "theft offense." They instead refer to that state's umbrella "theft offense" term.[12] So, the umbrella theft offense element in these states

---

[11]Such terms include "theft" and "larceny." *See* Table *infra*.

[12]*See, e.g.*, Indictment, *State v. Clark*, No. 9014039, 2001 WL 36111373 (Travis Cnty. Apr. 17, 2001) (Texas); Indictment, *State v. Howard*, No. CR20032139, 2003 WL 26116913 (Pulaski Cnty. June 19, 2003) (Arkansas); Indictment, *State v. Tyner*, No. 11SC104368, 2013 WL 12413526 (Fulton Cnty. Sept. 28, 2011) (Georgia); Indictment, *State v. Mau*, No. 06-1-1393, 2006 WL 5738265 (Honolulu Cnty. July 12, 2006) (Hawaii);

serves as a comparator with Ohio robbery's umbrella theft offense element. *See Mathis*, 579 U.S. at 517. And such a comparison demonstrates that at least on their faces, the robbery statutes of several other states criminalize conduct that doesn't necessarily entail ordinary theft (taking something of value from another)—just like Ohio. The chart below offers a sampling of such state robbery statutes and the breadth of the theft offenses on which they're predicated.

| State | Umbrella Theft Offense for Robbery | Examples of the Breadth of That Theft Offense |
|---|---|---|
| Arkansas | "theft." Ark. Code Ann. § 5-12-102(a). | receiving stolen property. Ark. Code Ann. § 5-36-106(a). |
| Connecticut | "larceny." Conn. Gen. Stat. Ann. § 53a-133. | "failing to pay the prevailing rate of wages," Conn. Gen. Stat. Ann. § 53a-119(14), receiving stolen property, *id.* § 53a-119(8), and installing "counterfeit" or "nonfunctional" air bags, *id.* § 53a-119(16). |
| Delaware | "theft." Del. Code Ann. tit. 11, § 831(a). | paying employees below the minimum wage and misclassifying an employee as an independent contractor with the intent to evade taxes. *See* Del. Code Ann. tit. 11, § 841D(a); *id.* tit. 19, § 1102A(a)(4), (a)(5). |
| Georgia | "theft." Ga. Code Ann. § 16-8-40(a). | "abandon[ing] a shopping cart upon any public street," Ga. Code Ann. § 16-8-21(c), receiving stolen property, *id.* § 16-8-7, and "bringing stolen property into" Georgia, *id.* § 16-8-9. |
| Hawaii | "theft." Haw. Rev. Stat. Ann. § 708-840(1). | receiving stolen property. Haw. Rev. Stat. Ann. § 708-830(7). |

Indictment, *Commonwealth v. Derkson*, No. 05-CR-220-002, 2005 WL 6315366 (Kenton Cnty. Apr. 15, 2005) (Kentucky); Indictment, *State v. Harris*, No. BANSCCR200601108, 2007 WL 7552790 (Penobscot Cnty. Jan. 2, 2007) (Maine); Indictment, *State v. Perry*, No. 16-02-0138I, 2021 WL 1236859 (Mercer Cnty. Mar. 24, 2021) (New Jersey); Indictment, *State v. Toland*, No. 09C48275, 2009 WL 10730496 (Marion Cnty. Sept. 17, 2009) (Oregon); Indictment, *Commonwealth v. Myers*, No. 2015CR0003265, 2015 WL 13567081 (Chester Cnty. Oct. 8, 2015) (Pennsylvania).

| Iowa | "theft." Iowa Code Ann. § 711.1(1). | "[a]ny act that is declared to be theft by any provision of the Code," Iowa Code Ann. § 714.1(10), exercising control over property that one knows to have been stolen, *id.* § 714.1(4), and destroying, concealing, or disposing of property in which somebody else has a security interest, *id.* § 714.1(5). |
|---|---|---|
| Kentucky | "theft." Ky. Rev. Stat. Ann. § 515.020(1). | receiving stolen property, Ky. Rev. Stat. Ann. § 514.110, and possessing or receiving stolen letters or postcards, *id.* § 514.150. |
| Maine | "theft." Me. Rev. Stat. Ann. tit. 17-A, § 651(1). | receiving stolen property. Me. Rev. Stat. Ann. tit. 17-A, § 359. |
| Michigan | "larceny." Mich. Comp. Laws Ann. § 750.530(1). | "injuring" somebody else's "fruit tree" and "injuring" another's "ornamental shrub." Mich. Comp. Laws Ann. § 750.367. |
| Montana | "theft." Mont. Code Ann. § 45-5-401(1). | pawn shop owner allowing stolen property to be bartered there after a peace officer has called for the property to be held for thirty days. Mont. Code Ann. § 45-6-314. |
| New Jersey | "theft." N.J. Stat. Ann. § 2C:15-1(a). | receiving stolen property or bringing stolen property into New Jersey. N.J. Stat. Ann. § 2C:20-7(a). |
| New York | "larceny." N.Y. Penal Law § 160.00. | "acquiring lost property," N.Y. Penal Law § 155.05(2)(b), and paying employees below the minimum wage, *id.* § 155.05(2)(f). |
| North Dakota | "theft." N.D. Cent. Code Ann. § 12.1-22-01(1). | receiving stolen property. N.D. Cent. Code Ann. § 12.1-23-02(3). |
| Oregon | "theft." Or. Rev. Stat. Ann. § 164.395(1). | receiving stolen property. Or. Rev. Stat. Ann. § 164.095(1). |
| Pennsylvania | "theft." 18 Pa. Stat. and Cons. Stat. Ann. § 3701(a)(1). | receiving stolen property. 18 Pa. Stat. and Cons. Stat. Ann. § 3925(a). |

| Texas | "theft as defined in Chapter 31." Tex. Penal Code Ann. § 29.02. | communicating trade secrets, Tex. Penal Code Ann. § 31.05(b)(3), selling property with an obliterated serial number, *id.* § 31.11(a)(2), and manufacturing devices that are designed to access encrypted signals, *id.* § 31.13. |
| Wyoming | "theft." Wyo. Stat. Ann. § 6-2-401 (citing Wyo. Stat. Ann. § 6-3-402). | receiving property of another. Wyo. Stat. Ann. § 6-3-402(a). |

In sum, at least seventeen other states' robbery statutes involve an umbrella theft offense broader than ordinary theft because that element doesn't necessarily entail taking something of value from another. And note how similar many of these theft offenses are to Ohio's broad array of theft offenses. For example, many of the above states' theft statutes encompass receiving stolen property. So does Ohio's. *See* Ohio Rev. Code Ann. §§ 2913.01(K)(1), 2913.51.[13]

By predicating its robbery statute on a broad definition of a "theft offense," Ohio hasn't "completely redefine[d]" the crime of robbery. *Brown*, 957 F.3d at 688. Were Ohio robbery's theft element not a categorical match with generic robbery's theft element, that would mean that reams of state robbery statutes don't match up with generic robbery. Supreme Court precedent forecloses such a conclusion. *See Castleman*, 572 U.S. at 167. After all, the Commission didn't promulgate such a "self-defeating" Guideline. *Quarles*, 587 U.S. at 654.

Defining generic robbery to account for the broad statutes of many states also respects the state legislatures that draft criminal codes. States are "independent sovereigns." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). They enact criminal laws to advance public safety and safeguard individual liberty within their borders, not to help the federal sentencing regime run smoothly. In other words, states don't fashion their criminal codes with the categorical approach in mind. Case in point: Ohio's current robbery law dates to 1973, almost two decades before the

---

[13]What's more, our sister circuits have found the robbery statutes of many of these states to be categorical matches for generic robbery. *See, e.g.*, *United States v. Stovall*, 921 F.3d 758, 759–61 (8th Cir. 2019) (Arkansas); *United States v. Harrison*, 56 F.4th 1325, 1331–36 (11th Cir. 2023) (Georgia); *United States v. McCants*, 952 F.3d 416, 424–29 (3d Cir. 2020) (New Jersey); *United States v. Carey*, No. 20-2723, 2021 WL 2936741, at *2 (3d Cir. July 13, 2021) (Pennsylvania); *Adair*, 16 F.4th at 470–71 (Texas).

Supreme Court in *Taylor* told courts to use the categorical approach in federal sentencing. So, when the Commission provides a generic, undefined term like robbery, courts must incorporate into that definition the many states that define robbery as a combination of a force element and an umbrella "theft offense." After all, those are the "basic elements" of a robbery, and courts cannot get hung up on "technical definitions and labels" when determining its generic definition. *Taylor*, 495 U.S. at 590, 599; *see Quarles*, 587 U.S. at 650.[14]

* * *

Thus, because the individual theft offenses are mere means of committing a singular "theft offense" element, Ohio robbery is a categorical match for generic robbery.

### III. Individual Theft Offenses as Elements: Guidelines Extortion

The majority assumes that the individual theft offenses are themselves elements, not means. Even if that were correct, it doesn't lead to the majority's conclusion that robbing two people at gunpoint is not a violent crime.

If the individual theft offenses are themselves elements, then the Ohio robbery statute criminalizes thirty-one distinct robbery offenses.[15] Because Ohio robbery indictments often don't charge the underlying theft offense element, the majority's approach suddenly sets off constitutional alarm bells: The Ohio and United States constitutions require an indictment to charge each element of a crime.

Consider the relevant constitutional provisions, both state and federal. Article I, Section 10 of the Ohio Constitution provides that "no person shall be held to answer for a capital, or

---

[14]The majority's definition of generic robbery flouts this guidance. Drawing on panel precedent, the majority defines generic robbery to involve "misappropriation of property." Maj. Op. at 18. This requires the defendant to "unlawfully take or use the property of another." *Id.* But the majority's reading of that standard would eliminate the robbery statutes of at least seventeen states from the generic definition, so it's too narrow. *See Castleman*, 572 U.S. at 167; *Stokeling*, 586 U.S. at 81.

The majority also criticizes me for defining generic robbery based on the definitions of "many states." Maj. Op. at 21. But as the majority itself recognizes, the generic definition of robbery derives from sources "such as . . . a survey of state law." *Id.* at 4.

[15]It's likely twenty-nine. Two of the "theft offense" predicates of Ohio robbery are robbery and aggravated robbery themselves. *See* Ohio Rev. Code Ann. § 2913.01(K)(1). It's hard to imagine how a robbery indictment could be predicated on a robbery or an aggravated robbery as the theft offense.

otherwise infamous, crime, unless on presentment or indictment of a grand jury." Ohio Const. art. I, § 10.  In light of that provision, the Ohio Supreme Court has explained that an indictment that doesn't contain the elements of the crime charged "is defective and cannot be cured." *State v. Headley*, 453 N.E.2d 716, 720 (Ohio 1983).  Otherwise, the defendant could be convicted "on a charge essentially different from that found by the grand jury." *Id.*

On the federal side, the Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be informed of the nature and cause of the accusation." U.S. Const. amend. VI.  This protection has been incorporated against the states by the Fourteenth Amendment's Due Process Clause.  *Gannett Co. v. DePasquale*, 443 U.S. 368, 379 (1979).  Similarly relevant is the Due Process Clause itself, which prevents states from depriving people of their liberty "without due process of law." U.S. Const. amend. XIV, § 1.

Given these provisions, the Supreme Court has explained that an indictment is constitutionally defective if it fails to "apprise the defendant with reasonable certainty, of the nature of the accusation against him"—even if the indictment recites the applicable statutory language. *Russell*, 369 U.S. at 765 (citation omitted).  "In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Id.* (citation omitted).

An Ohio robbery indictment resting on an unspecified theft offense thus seems to violate both the state and federal constitutions if the specific theft offense is itself an element.  As for the Ohio Constitution, the indictment doesn't "contain[] the elements of the offense charged." *Troisi*, 206 N.E.3d at 703–04 (citation omitted).  As for the United States Constitution, the indictment doesn't "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Russell*, 369 U.S. at 765 (citation omitted).  Maybe the defendant is accused of selling a device that's manufactured to gain access to cable TV. *See* Ohio Rev. Code Ann. § 2913.04(B).  Or maybe the defendant is accused of possessing a counterfeit telecommunications device with the purpose of using it criminally. *See id.* § 2913.06(A).  Or maybe he's accused of having issued a bad check. *See id.* § 2913.11(B).  The list goes on.

There were two ways to silence the constitutional alarm bells created by the majority's interpretation of Ohio's robbery statute.

First, the majority could have looked to state court interpretations and practice to see if they resolve the constitutional problem.  They do:  Ohio courts presume that a robbery indictment's unspecified theft offense is ordinary theft.  This presumption renders Ohio robbery a categorical match with Guidelines extortion.  It also avoids any grand jury and fair notice concerns created by the majority's interpretation of Ohio's robbery law.

Second, the majority could have certified the Ohio state law questions that are giving rise to the constitutional conundrum:  (1) whether the individual theft offenses are means or elements and (2) whether an unspecified theft offense in an Ohio robbery indictments refers to ordinary theft.

## A.  Ohio State Court Practice:  The Theft Presumption

Ohio courts presume that an unspecified theft offense in a robbery indictment refers to run-of-the-mill theft.

### 1.  The Ohio Supreme Court

The Ohio Supreme Court has equated "theft offense" with ordinary theft.  In *State v. Smith*, a defendant was found guilty of "theft" under Ohio Rev. Code Ann. § 2913.02, even though she was indicted only for robbery.  884 N.E.2d 595, 596–97 (Ohio 2008).  The robbery indictment alleged that the defendant had committed a predicate "theft offense"—but didn't specify which one.  The Ohio Supreme Court held that the defendant's conviction for ordinary "theft" was proper because, in Ohio, theft is a lesser included offense of robbery.  *Id.* at 599.  The court reasoned that, whatever the facts may be, "it would be *impossible*" to commit robbery under § 2911.02 without also committing "theft" under § 2913.02.  *Id.* (emphasis added).

The majority looks to facts in the *Smith* indictment to claim that the defendant was indicted for theft.  But when the defendant moved for reconsideration, the Ohio Supreme Court doubled down, explaining that the defendant was "not indicted for theft.  Rather, the indictment charged her with robbery, and the trial court convicted her of the lesser included offense of

theft." *State v. Smith*, 905 N.E.2d 151, 151 (Ohio 2009). We must accept what the Ohio Supreme Court says. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). This reading also makes sense. "Theft of retail merchandise from Macy's" is a fact supporting the charge. It's not a crime in the Ohio Revised Code. All told, the Ohio Supreme Court said that the defendant could be convicted of theft because her indictment for robbery meant she was also charged with ordinary theft. *See Smith*, 905 N.E.2d at 151–52.

*State v. Smith* controls Cervenak's case. Cervenak, like the defendant in *Smith*, was charged with robbery by "theft offense" under § 2911.02. The Ohio Supreme Court has explained that it's "*impossible*" to commit robbery by theft offense under § 2911.02 without also committing regular "theft" under § 2913.02. *Smith*, 884 N.E.2d at 599 (emphasis added). And as all agree, "theft" under § 2913.02 necessarily requires "obtaining something of value from another." U.S.S.G. § 4B1.2 cmt. n.1 (2021). Thus, under the rule of *State v. Smith*, Cervenak committed Guidelines extortion, a crime of violence.

*Smith* isn't a one-off. In *State v. Horner*, the defendant challenged his indictment's failure to specify what mental state was required for aggravated robbery. The Ohio Supreme Court said that aggravated robbery "includes the element of attempting or committing a theft offense, which incorporates *all the elements of theft*." 935 N.E.2d at 34 (emphasis added). Likewise, in *State v. Thomas*, the court again explained that a defendant commits robbery when he "flee[s] immediately after a theft or an attempted theft." 832 N.E.2d 1190, 1191 (Ohio 2005).

### 2. Ohio Lower Courts

What the Ohio Supreme Court has suggested, the Ohio Courts of Appeals have explicitly confirmed: "theft" is an element of Ohio robbery when the indictment doesn't specify the predicate theft offense. For example, in *State v. Tellis*, the court acknowledged that the defendant's robbery indictment "did not specify which theft offense the state accused [the defendant] of committing." 165 N.E.3d 825, 842 n.3 (Ohio Ct. App. 2020). The court proceeded

to "presume that the theft offense was theft." *Id.* Cervenak's situation is no different from the situation confronted by the Ohio Court of Appeals in *Tellis*.[16]

That similarity is critical: As the Supreme Court has made clear, "the Ohio courts have the final authority to interpret . . . that State's" law, and "the Ohio Court of Appeals" may "authoritatively" construe state law. *Brown v. Ohio*, 432 U.S. 161, 167 (1977) (quotation omitted). So, in the absence of a state supreme court holding, we must respect the appellate courts' interpretation of state law as authoritative unless there's an indication the state supreme court would rule differently. *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 n.3 (6th Cir. 2000). And there's no indication that the state supreme court would part ways with the state's lower courts: On the contrary, the Ohio Supreme Court itself has equated the "theft offense" underlying robbery with regular "theft." *See Smith*, 884 N.E.2d at 599. Accordingly, our court must follow that appellate court's lead—even if we believe its decision was "unsound." *Ziebart Int'l Corp. v. CNA Ins. Cos.*, 78 F.3d 245, 251 (6th Cir. 1996).

And two types of lower-court practices—how trial courts instruct juries on robbery and how appeals courts analyze sufficiency-of-the-evidence challenges to robbery convictions—also reveal that Ohio courts equate unspecified "theft offenses" with "theft."

When Ohio's trial courts hear cases in which the defendant is charged with a crime involving a "theft offense," but the state does not specify the theft offense, the courts charge juries using the definition for generic theft. For example, an Ohio grand jury indicted the defendant in *State v. Tillison* for robbery premised on an unspecified theft offense. *See* Indictment at 2, *State v. Tillison*, No. 2016 CRC-I 000371 (Wayne Cnty. Ct. C.P. Nov. 21,

---

[16]And in *State v. Martin*, the court of appeals recited the elements of Ohio aggravated robbery, including its "theft offense" clause that mirrors that of Ohio robbery. No. 13CA010356, 2014 WL 902670, at *2 (Ohio Ct. App. Mar. 10, 2014). Having recited that definition, it then cited the definition of run-of-the-mill Ohio "theft." *Id.* So, the court jumped straight from "theft offense" to ordinary "theft" to explain what's necessary to commit robbery. Similarly, in *State v. Frazier*, in assessing a sufficiency-of-the-evidence challenge to a defendant's robbery conviction, the court equated a "theft offense" with "the actual taking of . . . property." 60 N.E.3d 633, 640 (Ohio Ct. App. 2016).

2016).  The jury instructions defined the underlying "theft offense" as § 2913.02(A) theft.  Jury Instrs. at 4–5, 7 (Feb. 14, 2017).  *Tillison* is no outlier in this respect.[17]

The Ohio Supreme Court has implicitly endorsed this practice.  In *Tolliver*, the defendant's robbery indictment didn't specify his underlying theft offense.  19 N.E.3d at 871.  But the trial court instructed the jury on run-of-the-mill theft—including its "knowing[]" mental state for obtaining property.  *Id.*  The Ohio Supreme Court accepted that the defendant's predicate theft offense was theft as the jury instructions specified.  *Id.* at 872; *see also id.* at 874 ("R.C. 2911.02(A) predicates every robbery on the elements of a completed or an attempted 'theft offense,' which, for [the defendant], included the mental states of 'purpose' and 'knowingly.'  R.C. 2913.02(A).").  And the court did so over a dissent critiquing its assumption that ordinary theft necessarily applied, given that the "theft offense" statute has "a variety of meanings" beyond theft alone.  *See id.* at 876 (Lanzinger, J., dissenting).  What's more, at least one Ohio court of appeals has understood *Tolliver* to stand for the proposition that "every robbery is predicated on a theft."  *State v. Brock*, 140 N.E.3d 1239, 1245 (Ohio Ct. App. 2019).

Likewise, when Ohio appeals courts resolve defendants' sufficiency-of-the-evidence challenges to their robbery convictions, the courts ask whether the state offered sufficient evidence of ordinary theft.  *See, e.g.*, *United States v. Cervenak*, 99 F.4th 852, 860–61 (6th Cir. 2024) (collecting examples); *State v. Holloway*, No. 112129, 2023 WL 4503338, at *7 (Ohio Ct. App. July 13, 2023) (finding sufficient evidence of the items that the defendant "took from [the victim's] possession"); Indictment at 3–4, *State v. Holloway*, No. CR-22-668155-A (Cuyahoga Cnty. Ct. C.P. Mar. 4, 2022).[18]

---

[17]*See State v. Pigg*, No. 04CA2947, 2005 WL 1060569, at *3–5 (Ohio Ct. App. Apr. 28, 2005) (upholding the trial court's jury instruction on § 2913.02(A) theft where the elements of the underlying theft offense were otherwise unspecified); Jury Instr. at 14, *State v. Stovall*, No. CR17-3132 (Lucas Cnty. C.P. Ct. Mar. 7, 2018) (instructing the jury that § 2913.02(A) "'[t]heft' is an essential element of robbery" even in a case where the defendant was also charged with a different theft predicate—there, aggravated burglary); Indictment at 2–3, *id.* (Dec. 11, 2017).

[18]The majority doesn't cite a single case to the contrary.  It cites two cases where a qualifying "theft offense" didn't involve taking something of value.  *See* Maj. Op. at 9–10 (citing *State v. Stone*, No. 2023-CA-23, 2024 WL 208125, at *1 (Ohio Ct. App. Jan. 19, 2024); *State v. Dunn*, Nos. 112301 & 112916, 2023 WL 8474188, at *6 (Ohio Ct. App. Dec. 7, 2023)).  Robbery wasn't charged in either case.  So, they say nothing whatsoever about whether Ohio courts presume that an Ohio robbery based on an unspecified theft offense rests on theft.

**B. The Impact of the Theft Presumption**

Ohio courts' presumption that an unspecified theft offense in a robbery indictment refers to ordinary theft (1) establishes that Ohio robbery is a categorical match for Guidelines extortion and (2) avoids any constitutional concerns.

1. Matching with Guidelines Extortion

The presumption that "theft offense" means ordinary theft confirms that Ohio robbery is a categorical match with Guidelines extortion.

i. Guidelines Extortion

A crime punishable by more than one year of prison time is a "crime of violence" if its elements are "the same as, or narrower than" the elements of Guidelines "extortion." *See Descamps*, 570 U.S. at 257; U.S.S.G. § 4B1.2(a)(2). The Guidelines define "extortion" as "obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury." U.S.S.G. § 4B1.2 cmt. n.1 (2021).

ii. Ohio Robbery

To assess the elements of Ohio robbery, our court is "bound by" the state supreme court's interpretation of the relevant state statute, "including its determination of the elements of" the offense. *Johnson v. United States*, 559 U.S. 133, 138 (2010). In doing so, we keep in mind "that state courts are the ultimate expositors of state law." *Mullaney*, 421 U.S. at 691.

So, to win, Cervenak must show that the Ohio courts have interpreted their robbery statute as broader than Guidelines extortion (such that Ohio robbery isn't a categorical match). *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). As the Supreme Court explained in *Duenas-Alvarez*, Cervenak must provide evidence of this broader interpretation in "at least . . . his own case or other cases." *Id.* Thus, even if our court could "legal[ly] imagin[e]" conduct under Ohio's robbery statute that didn't constitute Guidelines extortion, that isn't enough. *Id.*; *see also Cradler v. United States,* 891 F.3d 659, 669 (6th Cir. 2018) (Keith, J.) (explaining that federal courts "cannot . . . look[] only to the words of the violated state statute").

This requirement from *Duenas-Alvarez* is rooted in the categorical approach itself.  For our court to find a categorical match, it's not necessary "that every conceivable factual offense covered by" Ohio's robbery statute aligns with Guidelines extortion.  *See James v. United States*, 550 U.S. 192, 208 (2007) (citing *Duenas-Alvarez*, 549 U.S. at 193), *overruled on other grounds by Johnson v. United States*, 576 U.S. 591 (2015).  The question is whether, when an Ohio robbery indictment doesn't specify the underlying theft offense, "the ordinary case" of Ohio robbery matches up with Guidelines extortion.  *Id.*  So, Cervenak must show that Ohio, *on average*, "actually prosecutes" robbery with an unspecified theft offense in a way that's broader than Guidelines extortion.  *Moncrieffe v. Holder*, 569 U.S. 184, 206 (2013).

Requiring Cervenak to point to state court cases in support of his argument also accords state courts the respect they deserve as "the final arbiters of state law in our federal system." *United States v. Taylor*, 596 U.S. 845, 859 (2022).  And it recognizes that no matter how clear the state statute's text may appear "[o]n its face," the state courts are free to "considerably narrow[] its application." *James*, 550 U.S. at 202.[19]

The majority, for its part, claims that the defendant can meet the realistic probability requirement by just pointing to the statutory text.  But that's not what the Supreme Court did in *Duenas-Alvarez*.  Indeed, the majority's text-only approach flies in the face of *Duenas-Alvarez*, *James*, *Johnson*, and *Moncrieffe*:  when a federal court interprets a state law while applying the categorical approach, it is "bound by" the state supreme court's interpretation.  *Johnson*, 559 U.S. at 138.  While it's true that "the statute itself defines the elements," Maj. Op. at 14, the state courts tell us what the statute means—and thus what its elements are.  We ought to listen to them:  states' "authoritative tribunal[s]" often find "in a statute less than meets the outsider's eye. Informed local courts may find meaning not discernible to the outsider." *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 30 (1959).

---

[19]The deference to state courts' narrowing constructions mandated by *Duenas-Alvarez* and *James* mirrors the deference to state courts' narrowing constructions in the First Amendment overbreadth context.  *See, e.g.*, *R.A.V. v. City of St. Paul*, 505 U.S. 377, 381 (1992).  Both forms of deference flow from the fact that state courts' constructions of state laws are "binding" on federal courts. *New York v. Ferber*, 458 U.S. 747, 769 n.24 (1982).

The majority tries to escape this line of precedent by citing *Taylor*. 596 U.S. at 858–59. But *Taylor* considered whether Hobbs Act robbery—a federal statute—was a crime of violence. *Id.* at 848. So, the Court itself was the final arbiter of the law's meaning. Not so when we interpret state law. As *Taylor* expressly recognized, we're not the "final arbiter" of state law; the state courts are. *Id.* at 859. Nothing in *Taylor*, then, supports the majority's conclusion that our inquiry can end at the plain text.[20]

The majority's invocation of *Taylor* is part of its broader text-only approach to Ohio's robbery statute. When interpreting federal laws, far be it from me to adopt anything other than a textualist approach. But when interpreting state laws, far be it from us to adopt any interpretation that doesn't square with that of the state courts.

Thus, Cervenak must show that Ohio regularly prosecutes robbery in a way that's broader than Guidelines extortion. He can't make that showing. Given that his robbery indictment didn't specify his theft offense, the question is whether Ohio robbery with an unspecified "theft offense" can be committed without "obtaining something of value from another." Because of Ohio courts' presumption that "theft offense" means ordinary theft, it can't. Ordinary theft involves taking something of value from another. Ohio Rev. Code Ann. § 2913.02(A). Thus, Ohio robbery matches up with Guidelines extortion.

### iii.  The Majority's Cases

The majority is unable to rebut this reading of Ohio's caselaw. For starters, it can't escape *Smith*'s grip by pointing to *State v. Castle*. In that case, an Ohio lower court claimed: "As receiving stolen property is a theft offense and it is impossible for an offender to commit a robbery without committing a theft offense, it follows that a robbery cannot be committed without also committing the offense of receiving stolen property." *State v. Castle*, 86 N.E.3d 813, 817 (Ohio Ct. App. 2017). *Castle* is correct that an offender can't commit robbery without

---

[20]The majority also cites to *Mellouli v. Lynch*, but that case too is unavailing. *See* Maj. Op. at 14 n.5 (citing 575 U.S. 798 (2015)). The Court in *Mellouli* never passed judgment on the applicability of *Duenas-Alvarez*. It thus didn't "consider[] the issue and consciously reach[] a conclusion about" *Duenas-Alvarez*. *See Wright v. Spaulding*, 939 F.3d 695, 702 (6th Cir. 2019). That silence is of scant persuasive value compared to the Court's repeated invocation of the need to look to state court interpretations of state law in *Duenas-Alvarez* itself, *James*, *Johnson*, and *Moncrieffe*.

also committing a theft offense, but that doesn't mean that the offender necessarily committed the *specific* theft offense of receiving stolen property.  He could have committed a different theft offense, such as ordinary theft.  So, *Castle* can't be right when it reasons that an offender who commits robbery necessarily commits every single one of the thirty-one theft offenses (including, among others, receiving stolen property).  Aggravated robbery, for example, is a theft offense.  Under *Castle*'s logic, a defendant who commits robbery necessarily committed aggravated robbery.  Obviously, that logic doesn't add up.

Further, *Smith*, *Horner*, and *Thomas* provide "persuasive data that the [Ohio] Supreme Court would decide otherwise."  *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995).[21]  Thus, *Castle* doesn't move the needle.

In rare instances—the majority cites two—Ohio courts don't treat an unspecified "theft offense" as ordinary theft.  But even then, Ohio courts still require the government to show that the robbery defendant took something of value, thereby satisfying the definition of Guidelines extortion.

In one of the majority's cases, the court presumed that "theft offense" entails the unauthorized use of another's property.  *See State v. Swarthout*, No. 10CA0107-M, 2011 WL 4526840, at *3 (Ohio Ct. App. Sept. 30, 2011).  Unauthorized use involves using or operating another's property without consent.  Ohio Rev. Code Ann. § 2913.04(A).  That may not entail a permanent deprivation of property, but a temporary one.  For example, in *Swarthout*, the defendant seized the victim's phone and flipped through it for some time before leaving it at the crime scene with the victim.  *See* 2011 WL 4526840, at *1, *3.

Such a temporary taking still entails "obtaining something of value from another." U.S.S.G. § 4B1.2 cmt. n.1 (2021).  To "obtain" something is to "bring [it] into one's own possession," even if not permanently.  *Obtain*, Black's Law Dictionary (10th ed. 2014).  And other courts have interpreted Guidelines extortion not to require a deprivation of property to be

---

[21]Another wrinkle associated with the majority's citation to *Castle* is that the state amended the charges to include receiving stolen property under § 2913.51(A).  *See* Charge, 2014 CR 00550, *State v. Castle*, https://ecourts.mahoningcountyoh.gov/eservices/searchresults.page?x=OSxTm6C1*rNNdibNTFvmcKoe1sKhls8tk Mi8l3NPynT7HjMaGcc8h76HhobykYc3tfeNGj7nviMNvPZAZ63gfQ.

permanent. *See United States v. Velasquez-Bosque*, 601 F.3d 955, 960 (9th Cir. 2010) (holding that extortion does not "contain any requirement that property be taken permanently"). Therefore, even in the one instance when an Ohio court presumed a robbery's unspecified theft offense was unauthorized use (that is, a temporary taking), the robbery was still a categorical match for Guidelines extortion.

The lone other case the majority cites for the proposition that Ohio cases exist where robbery is committed without taking something of value is *State v. Dixon*. No. 89-CA-22, 1990 WL 94612, at *2–3 (Ohio Ct. App. June 20, 1990). In that case, the underlying theft offense was forgery: the defendant tried to cash a forged check at a convenience store. *Id.* at *1. This involved attempting to take something of value from another—that is, he tried to take cash from the store. *Dixon* does nothing to take Ohio robbery outside the purview of Guidelines extortion.[22]

In sum, among the parties' sentencing memoranda before the district court, the parties' briefing before the original three-judge panel, the parties' en banc petition filings, the parties' en banc briefing, the three separate panel opinions, and the four opinions here, no one can identify a *single case* of Ohio robbery that didn't entail taking something of value from another.

That failure should close this case. As a defendant arguing that Ohio's law is broader than Guidelines extortion, Cervenak bears the burden of showing a "realistic probability" that Ohio robbery covers conduct that doesn't fall within the federal crime to which it's being compared. *Duenas-Alvarez*, 549 U.S. at 193. Demonstrating "a realistic probability is not an exercise in educated guessing." *United States v. Castillo-Rivera*, 853 F.3d 218, 222 (5th Cir. 2017) (en banc). Cervenak had to come armed with evidence that "the reality of prosecutions" for Ohio robbery covers more conduct than Guidelines extortion. *Butts*, 40 F.4th at 772 (citing

---

[22]To be sure, the majority's two cases that rely on unauthorized use and forgery instead of theft still raise constitutional questions. Although the Ohio lower courts aren't clear, unauthorized use could be a lesser included offense of theft. *Compare State v. Vrazalica*, No. 84412, 2005 WL 616082, at *4 (Ohio Ct. App. Mar. 17, 2005) *with State v. Mumford*, No. 17-81-28, 1983 WL 7191, at *2 (Ohio Ct. App. Feb. 4, 1983). If so, that would avoid any constitutional defect and is just one more question the Ohio Supreme Court could answer if we had certified. As to forgery, the single case the majority cites, *State v. Dixon*, was decided thirty-five years ago—well before *Smith*. To the extent one decades-old case could have constitutional defects, that wreaks far less havoc on Ohio than the majority's solution. Of course, if we were willing to certify the question, the Ohio Supreme Court (the ultimate arbiter of Ohio law) could resolve this issue.

*Moncrieffe*, 569 U.S. at 191). But Cervenak has provided no evidence that Ohio robbery premised on an unspecified theft offense encompasses any conduct beyond that covered by Guidelines extortion. So, under binding Supreme Court precedent, he loses.

2. Avoiding Constitutional Concerns

The majority, for its part, refuses to recognize Ohio's theft presumption. Instead, it assumes that any one of thirty-one separate theft offenses can serve as a predicate for a robbery indictment that doesn't specify the theft offense. In so doing, the majority manufactures numerous constitutional problems. For one, if an indictment doesn't specify a theft offense, and there's no presumption of theft, that indictment violates Ohio's Grand Jury Clause by failing to list the elements of the crime charged. *See* Ohio Const. art. I, § 10.

Further, without a theft presumption, the defendant cannot have fair notice of the charges being brought against him, thereby allowing him to prepare his defense. *See* U.S. Const. amend. VI; *id.* amend. XIV, § 1. His theft offense could be ordinary theft, but it could also be one of the more esoteric theft offenses listed in § 2913.01(K)(1). He might prepare a defense geared towards one of the thirty-one theft offenses, only to find out at trial that the prosecutor is proving up a different theft offense.

By contrast, the presumption of regular theft gives the defendant fair notice of the charges and enables him to prepare a defense. When confronted with an indictment's allegation that he had used or threatened force while committing a "theft offense," the defendant knows that he can retort that he had not in fact been stealing or trying to steal the victim's property. He won't later be blindsided by a prosecutor proving he in fact had committed any one of § 2913.01(K)(1)'s theft offenses, because theft offense presumptively means ordinary theft.

Thus, by not recognizing Ohio's theft presumption, the majority runs roughshod over the Ohio and United States constitutions.

In response, the majority (1) misreads Ohio caselaw, (2) disregards Ohio statutes and rules of criminal procedure, and (3) misunderstands constitutional avoidance.

i. The Majority's Misreading of Ohio Caselaw

The majority's response proceeds in two steps. First, the majority notes that the Ohio Supreme Court has said that indictments that track the relevant statutory language provide a defendant with adequate notice of the crime charged. Second, the majority states that if the indictment tracks the statute but omits an element—such as the specific theft offense—a bill of particulars can cure that defect.

At step one, the Ohio Supreme Court has never said that a valid indictment can omit an element of the crime, even if it tracks the statutory language. Rather, the Ohio Supreme Court has made clear that an indictment must "contain[] the elements of the offense charged." *Troisi*, 206 N.E.3d at 703–04 (citation omitted). This rule is grounded in Article I, Section 10 of the Ohio Constitution (which contains both a Grand Jury Clause and a Notice Clause) and the Notice Clause of the Sixth Amendment. *Id.* at 703.

An indictment can satisfy this requirement in different ways. For one, it can track the language of the statute—that is, it can track the statutory language that lists the elements. *State v. Whitaker*, 207 N.E.3d 677, 695 (Ohio 2022). Thus, in the context of robbery (and assuming, as we do here, that the specific type of theft offense is itself an element), the indictment would have to track the language of the specific theft offense. Alternatively, if the charged offense relies on a predicate offense as an element, the indictment can refer to the statute number of the predicate offense. *Troisi*, 206 N.E.3d at 704 (citing *Buehner*, 853 N.E.2d at 1164). In the robbery context, the indictment would refer to the theft offense by statute number, such as specifying § 2913.02 to indicate regular theft.

Therefore, the majority is wrong to imply that an indictment suffices when it tracks the statutory language, even if it omits a statutory element. If a predicate offense is an element, the indictment must either recite the statutory language with all the elements or cite the predicate offense by statute number.

At step two, the majority is wrong to conclude that a bill of particulars can save an indictment that doesn't contain each element of the crime charged. A bill of particulars can put meat on the bones of an indictment that fails to give the defendant "a fair and reasonable

opportunity to prepare his defense." *Id.* (citation omitted). But it can't save an indictment that is not "legally sufficient" in the first place: the indictment itself must "describ[e] the elements of the charged offense." *Id.* (citation omitted).

Given the Ohio Constitution's Grand Jury Clause, it's unsurprising that the Ohio Supreme Court has never said that an indictment can fail to list the elements of a crime or that a bill of particulars can cure such a failure. Recall that Article I, Section 10 of the Ohio Constitution guarantees that "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." Ohio Const. art. I, § 10. So, a grand jury indictment that doesn't include the elements of the crime charged "is defective and cannot be cured." *Headley*, 453 N.E.2d at 720. As an Ohio appellate court put it: "It is elementary that averments in a bill of particulars may not be used to cure fundamental defects in an indictment." *State v. Gingell*, 455 N.E.2d 1066, 1070 (Ohio Ct. App. 1982); *accord State v. Nelson*, 225 N.E.3d 480, 497 (Ohio Ct. App. 2023); *cf. Buehner*, 853 N.E.2d at 1165 (Moyer, C.J., dissenting) (noting that Article I, Section 10 of the Ohio Constitution "requires a grand jury to consider every element of a charged offense before issuing an indictment").

Ohio's Grand Jury Clause and caselaw thus make clear that a bill of particulars can detail an indictment's factual basis but can't fix an indictment's failure to contain the elements of the crime charged. To better grasp this point, consider a hypothetical. A man commits two robberies on January 1—robbery A and robbery B. The indictment states that the defendant committed a robbery on January 1. The indictment contains the elements of robbery, but it doesn't provide supporting facts. Thus, the defendant does not know whether he's being indicted for robbery A or for robbery B. A bill of particulars can provide that clarity by laying out the underlying facts in more detail. Then, the defendant can make an informed choice whether to plead guilty or not. By contrast, if the indictment fails to "describ[e] the elements of the charged offense" of robbery, it's legally insufficient from the start; the grand jury did not indict the defendant with the charged crime. *Troisi*, 206 N.E.3d at 704 (citation omitted). No bill of particulars can save that robbery indictment. *Id.* If it could, then the prosecutor, who provides the bill of particulars, would be indicting the defendant for the crime charged. That's nonsensical under Ohio's guarantee of an indictment by grand jury.

While the majority relies on the Ohio Supreme Court's decision in *State v. Skatzes* to support its novel reading of Ohio's caselaw and Grand Jury Clause, that decision is not to the contrary. In *Skatzes*, the defendant was charged with kidnapping, among other charges. 819 N.E.2d 215, 232 (Ohio 2004). Ohio's kidnapping statute criminalizes removing or restraining someone for several listed purposes. Ohio Rev. Code Ann. § 2905.01(A)(1)–(6). Critically, the enumerated purposes are means of committing kidnapping; they are not elements. How do we know? The Ohio Supreme Court endorsed the lower court's treatment of the purposes "as alternative means to satisfy the mental element" of kidnapping. *Skatzes*, 819 N.E.2d at 237. Moreover, Ohio jury verdicts must be "unanimous." Ohio Crim. R. 31(A). And *Skatzes* held that the jury was "not required to unanimously agree upon any one purpose for [the] kidnapping." 819 N.E.2d at 238. Thus, the specific purpose underlying a kidnapping is not an element.

Now, consider the facts of *Skatzes*. The indictment charged the defendant with kidnapping in service of four distinct purposes—including to "facilitate the commission of any felony." Ohio Rev. Code Ann. § 2905.01(A)(2). The defendant took issue with the indictment for not specifying the felony that his alleged kidnapping sought to facilitate. *Skatzes*, 819 N.E.2d at 233. The Ohio Supreme Court rejected this challenge because the bill of particulars could remedy the omission of that felony. *Id.* Of course it could—as one of the listed purposes, facilitating the commission of a felony is a means of committing kidnapping. So, the indictment didn't have to specify the underlying felony. As the Ohio Supreme Court put it, the underlying felony was a "basis for the grand jury's findings," not an element. *Id.* In sum, *Skatzes* does not stand for the proposition that an indictment can omit an underlying offense when that offense is an element of the crime charged. Rather, it stands for the uncontroversial point that an indictment need not include every possible means of committing an offense.[23]

---

[23]The majority also cites two Ohio lower court cases that upheld indictments that did not specify a predicate offense. Of course, neither of these unreported lower court cases can upend the Ohio Supreme Court's consistent mandate that Ohio indictments "contain[] the elements of the offense charged." *Troisi*, 206 N.E.3d at 703–04 (citation omitted).

Moreover, both cases can be squared with Ohio Supreme Court precedent. In *Scott*, the defendant stabbed the victim to death and stole his wallet. *State v. Scott*, No. 22745, 2010 WL 1732601, at *1 (Ohio. Ct. App. Apr. 30, 2010). The defendant challenged his aggravated robbery indictment on the grounds that it didn't specify the

All in all, Ohio caselaw does not support the majority's claim that an Ohio indictment can be valid even if it doesn't name all the charged crime's elements. Rather, it supports the opposite conclusion.

### ii. The Majority's Disregard of Ohio Statutes and Rules of Criminal Procedure

The majority's approach is also at odds with Ohio's statutes and rules of criminal procedure. The Ohio statute providing for bills of particulars doesn't allow a bill of particulars to cure an indictment that fails to list all the elements of a crime. Under Ohio law, a bill of particulars may detail "the nature of the offense charged and the conduct of the defendant which is alleged to constitute the offense." Ohio Rev. Code Ann. § 2941.07. Ohio Rule of Criminal Procedure 7(E) says the same. Ohio Crim. R. 7(E). So, although a bill of particulars can provide details regarding the nature of the offense charged, the indictment must charge the offense in the first place. And to do that, the indictment must contain all the elements. *Troisi*, 206 N.E.3d at 704.

### iii. Constitutional Avoidance

At bottom, a bill of particulars cannot cure an indictment that fails to comply with Ohio's Grand Jury Clause. *See* Ohio Const. art. I, § 10. That should be enough to give the majority pause before it insists that a bill of particulars can cure an invalid indictment. After all, the Ohio Supreme Court, not the Sixth Circuit, is the ultimate expositor of Ohio's constitution.

---

underlying theft offense. *Id.* at *8. The court rejected his challenge. It reasoned that the indictment adequately tracked the words of the statute and that a bill of particulars could supply additional details. *Id.* *Scott* can be read to rightly (though implicitly) conclude that the specific theft offense is a mere means of committing the theft offense element. *See supra* Part II.A. After all, *Scott* relied on *State v. Landrum*, 559 N.E.2d 710, 724–25 (Ohio 1990), which in turn cited an Ohio Supreme Court case holding that an indictment is "defective and cannot be cured" if it fails to contain the elements of the charged crime. *Headley*, 453 N.E.2d at 720. Alternatively, the theft presumption could've been at work in *Scott*. *Cf. Tellis*, 165 N.E.3d at 842 n.3.

The majority also cites *State v. Vaughn*. There, the court found that an indictment for "theft in office," *see* Ohio Rev. Code Ann. § 2921.41(A)(2), that didn't specify the underlying theft offense wasn't defective. *See* No. 10CA009820, 2011 WL 332659, at *3 (Ohio Ct. App. Jan. 31, 2011). If the specific theft offense is a means, then *Vaughn* poses no problem. If it's an element, then *Vaughn* was incorrect: as the dissenting judge put it, "the State should have identified the predicate theft offense." *Id.* at *6 (Belfance, P.J., dissenting). Still, because the Ohio Supreme Court is the ultimate expositor of Ohio law, this unreported lower court case cannot overcome the Ohio Supreme Court precedents discussed above.

As for the due process and Sixth Amendment concerns raised by an indictment that doesn't specify a predicate theft offense, I agree with the majority that a bill of particulars can cure those defects. But the existence of a potential cure does not change the majority's disregard for constitutional avoidance. This principle of interpretation—dating back to founding-era Supreme Court precedent, *see Mossman v. Higginson*, 4 U.S. (4 Dall.) 12 (1800)—is about not creating a constitutional issue in the first place. As Chief Justice Marshall put it: "The question, whether a law be void for its repugnancy to the constitution, is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative, in a doubtful case." *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 128 (1810). The fact that Ohio might have procedures to cure some of the constitutional issues that our interpretation creates is of no moment; that the state may be able to clean up our mess says nothing about our duty to avoid creating the mess to begin with. Thus, the only interpretation of Ohio's robbery statute that accords with constitutional avoidance is to presume an unspecified theft offense refers to theft (assuming, of course, that each theft offense is an alternative element).

\*     \*     \*

In the end, the majority is determined to read Ohio's robbery indictments in a way that leaves them defective as a matter of both state and federal constitutional law. First, the majority reasons that the specific theft offense underlying a robbery indictment is an element as opposed to a means of committing robbery. If true, that's a big problem, since an indictment must contain the elements of the charged crime. Luckily, Ohio caselaw offers a solution to the majority's self-inflicted constitutional conundrum: the theft presumption. Yet the majority doubles down, papering over reams of Ohio cases that apply the theft presumption and allay constitutional concerns.

The best explanation for the majority's persistence is that it doesn't believe it's creating any constitutional issues. The most unfortunate consequence of that mistaken belief is that it leads the majority to forgo the last defensible way to resolve this case and the one chosen by our sister circuits when facing similar uncertainty: certification.

**IV.  Certification**

Even if the majority refuses to follow Ohio courts' interpretation of state law, we could have at least asked the Ohio Supreme Court for clarification.  United States Supreme Court precedent instructs us to certify state law questions to the state supreme court to avoid constitutional concerns—like the fair notice concerns that spring from the majority's understanding of Ohio law.  Other circuits follow the Supreme Court's directions and have regularly certified questions in analogous situations.  Our court should have followed their lead.

First, we could have certified whether the individual theft offenses that underlie Ohio robbery convictions are different means of committing a singular theft offense or are themselves alternative elements of robbery.  If the individual theft offenses are means, that would cure any constitutional concerns with Ohio robbery indictments.  Second, if each theft offense is an alternative element of robbery, we could have asked the Ohio Supreme Court whether it meant what it said in *Smith*:  that robbery entails theft.  That too would resolve any constitutional issues, as explained above.

The majority's unwillingness to certify is particularly troubling in this context.  Normally, we have no choice but to definitively rule on thorny legal issues.  But today, we didn't have to do that.  This case turns on multiple intricacies of Ohio law.  Certification allows us to turn to the state supreme court to resolve those nuances.  Accordingly, the majority should have recognized its own limitations and asked the Ohio Supreme Court for help—especially since its ruling has constitutional implications.

**A.  Supreme Court Precedent**

The Supreme Court has directed us to certify state-law questions to state courts before resolving those questions in a way that raises constitutional concerns.

Take *Mckesson v. Doe*, 592 U.S. 1 (2020) (per curiam).  There, the dispositive question of state law was whether Louisiana tort law permitted a court to hold a protest organizer liable for injuries that protest attendees caused.  *Id.* at 3–4.  If the answer was "yes," there might have

been First Amendment issues.  Without consulting Louisiana, the Fifth Circuit initially answered "yes."  *Id.* at 3.

The Supreme Court vacated the Fifth Circuit's judgment.  In doing so, the Supreme Court admonished that the "Fifth Circuit should not have ventured into so uncertain an area of tort law—one laden with value judgments and fraught with implications for First Amendment rights—without first seeking guidance on potentially controlling Louisiana law from the Louisiana Supreme Court."  *Id.* at 6.  So too here.  The Sixth Circuit should not venture into an area of Ohio criminal law—especially one fraught with state constitutional, due process, and Sixth Amendment implications—without first consulting the Ohio Supreme Court.

To be sure, the source of the constitutional concern here isn't a state statute, but a state's indictment practice.  But that poses no bar to applying the well-trod principle of constitutional avoidance.  It didn't stop the Supreme Court from doing so in *Mckesson*, where the source of the concern wasn't a statute, but the common law.

The Supreme Court was similarly insistent about the need to certify before creating constitutional pitfalls in *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997).  There, Arizona passed a constitutional amendment making English the official state language, including "the language of . . . all government functions and actions."  *Id.* at 48 (citation omitted).  A state employee sued.  *Id.* at 49.  Throughout the litigation, Arizona's Attorney General sought certification to the Arizona Supreme Court to obtain an authoritative construction of the amendment that could save it from constitutional concerns.  *Id.* at 75.  The lower courts refused, instead finding the relevant state amendment to be "clear."  *See Yniquez v. Arizonans for Off. Eng.*, 69 F.3d 920, 929 (9th Cir. 1995), *vacated sub nom. Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43 (1997).  But the Supreme Court made clear that certification was the proper approach when a saving construction was possible.  *Arizonans for Off. Eng.*, 520 U.S. at 75.  So, the Court vacated the lower court's judgment and allowed the Arizona Supreme Court to issue a definitive ruling on the construction of the state law.  *Id.* at 80.

This procedure makes sense.  After all, a court's "task is to seek harmony, not to manufacture conflict," between laws and the Constitution.  *United States v. Rahimi,* 602 U.S.

680, 701 (2024) (citation omitted). And that's no less true when the law at issue is state law. *See Soc'y for the Propagation of the Gospel*, 22 F. Cas. at 766 (Story, J.) (stating that the federal courts "cannot but entertain the most entire respect and confidence" in state courts); *Defiance Water Co. v. City of Defiance*, 191 U.S. 184, 194 (1903) (noting "the presumption" that "in all cases . . . the state courts will do what the Constitution and laws of the United States require"); *Fox v. Washington*, 236 U.S. 273, 277 (1915) (Holmes, J.) ("So far as statutes fairly may be construed in such a way as to avoid doubtful constitutional questions they should be so construed; and it is to be presumed that state laws will be construed in that way by the state courts." (citation omitted)); *DeVillier v. Texas*, 601 U.S. 285, 293 (2024) ("We should not 'assume the States will refuse to honor the Constitution,' . . . because 'States and their officers are [also] bound by obligations imposed by the Constitution.'" (alteration in original) (quoting *Alden v. Maine*, 527 U.S. 706, 755 (1999))).

And this analysis says nothing of the potential state constitutional concerns raised by the majority's approach. Our court must avoid creating any such problems. *See Soc'y for the Propagation of the Gospel*, 22 F. Cas. at 769 (Story, J.). So, the state constitutional angle is yet another reason to certify.

Instead, the majority takes it upon itself to incorrectly answer questions of Ohio law. The majority decides that Ohio didn't intend robbery to be a crime of violence. The majority decides to flout the Ohio Supreme Court's decision in *State v. Smith* and hold that Ohio robbery doesn't always require taking something of value from another. The majority decides that an unspecified "theft offense" could refer to any of the thirty-one enumerated offenses in § 2913.01(K)(1), when Ohio's caselaw shows otherwise. And the majority implicitly concludes that reams of Ohio robbery indictments are constitutionally insufficient.[24]

### B. Other Circuits' Certification Practice

Worse still, in defying Supreme Court precedent and misinterpreting state law, our court is in a league of its own: our sister circuits have often certified questions of state law when

---

[24]If they're not constitutionally deficient, that means the individual theft offenses are themselves means— which in turn means that Ohio robbery is a categorical match with generic robbery. *See supra* Part II.

wading through the categorical approach's thicket. *See United States v. Franklin*, 895 F.3d 954, 961 (7th Cir. 2018) (per curiam) (certifying a means-versus-elements question of state law in light of significant "practical consequences" for federal sentencing and state criminal procedure), *certifying question to* 928 N.W.2d 545 (Wis. 2019); *United States v. Conage*, 976 F.3d 1244, 1263 (11th Cir. 2020) (seeking clarification on how Florida defined "purchase" in a drug trafficking statute), *certifying questions to* 346 So.3d 594 (Fla. 2022); *United States v. Glispie*, 943 F.3d 358, 360 (7th Cir. 2019) (asking whether the limited-authority doctrine applies to Illinois residential burglary), *certifying question to* 181 N.E.3d 719 (Ill. 2020); *United States v. Lawrence*, 905 F.3d 653, 659 (9th Cir.), *certifying questions to* 431 P.3d 420 (Or. 2018), *on reconsideration*, 441 P.3d 587 (Or. 2019) (en banc) (accepting, and then declining, questions of whether Oregon robbery was divisible).

And they have done so even when "[t]he most natural reading" of the relevant state law cuts in one direction. *Somers v. United States*, 15 F.4th 1049, 1054 (11th Cir. 2021), *certifying questions to* 355 So. 3d 887 (Fla. 2022). Because the definitive interpretation of state law is up to state courts—not us, no matter how clear we may think the text of the state law is—other circuits have "respectfully [sought] the guidance" of the relevant state supreme court. *Id.* at 1056. That deference squares with "the fundamental principle that we are not free to substitute our own interpretations of state statutes for those of a State's courts." *Schad v. Arizona*, 501 U.S. 624, 636 (1991) (plurality opinion). Even if we couldn't bring ourselves to reach a defensible answer, we didn't have to lurch for the indefensible.

In the end, state legislatures don't write their criminal laws with the categorical approach in mind. Certain drafting practices can seem efficient and useful to state legislators. But they can create issues when we cram them into federal sentencing; it's like trying to fit a square peg in a round hole. So, if the plain text and state caselaw don't point in the same direction, and our decision has significant practical consequences and raises serious constitutional concerns, we should ask the state for a definitive answer.

\* \* \*

Not all explanations are excuses. But for lower court judges, unsavory precedents can sometimes offer both. At times, "precedent made me do it" can explain and excuse holdings that otherwise seem unjust or just plain wrong. *See, e.g.*, *Nat'l Republican Senatorial Comm. v. FEC*, 117 F.4th 389, 395 (6th Cir. 2024) (en banc).

But precedent didn't make the majority conclude that robbing two people at gunpoint isn't a crime of violence. In fact, precedent counseled against it. Precedent makes clear that, whether individual theft offenses are "means" of committing robbery's "theft offense" element or are themselves "elements," Tyren Cervenak committed a crime of violence when he held two people up at gunpoint. If they're means, then Ohio robbery is a categorical match for generic robbery. If they're elements, then Ohio robbery is a categorical match for Guidelines extortion.

The majority's choice is not without real-world consequences. By concluding that robbery indictments resting on an unspecified theft offense may rest on any of thirty-one distinct offenses, the majority risks opening up countless Ohio robbery indictments (and in turn, convictions) to constitutional challenges. If those challenges succeed, countless violent criminals in Ohio may serve less time in prison and spend more time on the streets. The majority accuses me of resorting to "scare tactics" by worrying about these consequences. Maj. Op. at 22. If following Supreme Court and Ohio precedent—and then pointing out the practical effects of ignoring that precedent—amount to "scare tactics," then the majority is right. At the end of the day, we should take "every reasonable precaution" to know we're right on the law before letting violent criminals out of jail sooner. *Brown v. Plata*, 563 U.S. 493, 580 (2011) (Alito, J., dissenting).

Faced with these potentially disastrous real-world consequences, the majority should have at least certified the question to the Ohio Supreme Court rather than rip the issue out of Ohio's hands. "It is hard to fathom . . . why [our court] would countenance such an outcome so divorced from reality"—especially when we had the opportunity to follow our sister circuits and ask Ohio for answers. *Taylor*, 596 U.S. at 863 (Thomas, J., dissenting).

The categorical approach may compel us to shield our eyes from reality, but it didn't compel us to blind ourselves to controlling Supreme Court caselaw. The categorical approach may force us to cover our ears when common sense tells us that violent crimes are crimes of violence, but it didn't force us to ignore both how a mass of states define robbery and how the Ohio Supreme Court interprets Ohio law. I respectfully dissent.